Vincent James **LANDANO**, Appellant,

v.

John J. **RAFFERTY**, Superintendent, Rahway State Prison, and Irwin I. Kimmelman, Attorney General of the State of New Jersey.

No. 87–5913.

United States Court of Appeals, Third Circuit.

Argued July 27, 1988.

Sept. 9, 1988.

Neil Mullin (argued), Smith, Mullin & Kiernan, P.C., West Orange, N.J., for appellant.

W. Cary Edwards, Atty. Gen. of N.J., Leslie Faye Schwartz (argued), Deputy Atty. Gen., Div. of Crim. Justice, Trenton, N.J., for appellees.

Before GIBBONS, Chief Judge, and SEITZ and HUTCHINSON, Circuit Judges.

## OPINION OF THE COURT

SEITZ, Circuit Judge.

Appellant Landano appeals the order of the district court denying his petition for a writ of habeas corpus pursuant to 28 U.S. C. § 2254 (1982). 670 F.Supp. 570 (1987). This court has jurisdiction under 28 U.S.C. § 1291 (1982).

### I. *Background*

In August 1976, two gunmen robbed the Hi–Way Check Cashing Service in Kearny, New Jersey. During the robbery, one of the gunmen shot and killed a Newark police officer. A Hudson County grand jury indicted Landano and three other men, Allen Roller, Victor Forni, and Bruce Reen, for felony murder and other crimes stemming from the robbery. The trial of Forni and Reen was severed. Roller plead *non vult* to the felony murder charge and agreed to testify against Landano, whose

case proceeded to trial in New Jersey Superior Court.

The evidence at trial depicted the crime and its immediate aftermath essentially as follows. One of the perpetrators entered the trailer that housed the check cashing service, and the other remained outside. While the robbery was in progress, a Newark patrol car driven by Officer John Snow entered the parking lot of the service. The perpetrator who had remained outside approached the patrol car and shot Officer Snow at close range, killing him. The two perpetrators sped away from the service in an automobile. They soon came upon a blocked intersection. In an effort to escape the traffic, the driver manuevered on to a railroad right of way nearby and drove along the tracks for some distance.

The evidence linking Landano to the crime included the following. Roller testified that he and Landano committed the robbery, with Roller entering the trailer and Landano remaining outside. Roller also testified that when he rejoined Landano outside, Landano stated that he had had to "ice [or waste] the cop."

An employee of a warehouse near the scene of the crime testified that he saw a dark-haired man approach a police patrol car in the parking lot of the check cashing service. The employee turned away from the parking lot and then heard gunshots. When he looked back to the parking lot, he saw a green Chevrolet, driven by the dark-haired man, pulling away from the lot. The employee was unable to identify the dark-haired man, but Landano had dark hair.

Jacob Roth, the owner of the check cashing service, identified Landano as a participant in the crime. Roth, however, maintained that Landano was the one who entered the trailer, not the one who stayed outside. Roth also observed the license number of the vehicle in which the perpetrators drove away.

Raymond Portas, a truck driver, testified that while sitting at a blocked intersection in Kearny on the morning of the crime, he saw a green Chevrolet manuever out of traffic and then proceed along nearby railroad tracks. Portas's description of the license number of the vehicle matched Roth's. At trial, Portas identified Landano as the driver of the vehicle and testified that he had picked Landano's photograph out of an array at a pre-trial identification session.

After approximately two days of deliberation, the jury informed the trial judge that it was unable to reach an unanimous verdict on any of the counts submitted. The judge delivered a supplemental charge and ordered the jurors to resume their deliberations. Approximately one hour later, the jury returned a verdict finding Landano guilty on all counts. Landano was sentenced to life imprisonment on the felony murder count and a consecutive term of seven to fifteen years on the remaining counts.

After exhausting his state remedies, Landano petitioned the district court for a writ of habeas corpus. The district court denied relief, and this appeal followed.

## II. *Discussion*

### A.

█ Landano raises several arguments concerning Portas's testimony. First, he asserts that Portas's out-of-court identification was so unreliable that the trial court's decision to admit testimony as to that identification amounted to constitutional error under the totality-of-the-circumstances test set forth in *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). The district court rejected this argument. Our review is plenary. We too find the argument to be meritless. *Neil*'s totality-of-the-circumstances test applies only to identifications obtained through suggestive techniques, and at the time of the trial there was no indication that the State had obtained Portas's out-of-court identification of Landano by suggestive means.

█ Landano's second argument stems from his claim that the State did in fact obtain both Portas's out-of-court and in-court identifications by suggestive means and that the prosecution violated the due process standards enunciated in *Brady v.*

*Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), by withholding that information from the defense. The factual basis for that claim derives from testimony Portas provided in a 1982 state court post-conviction hearing. At the hearing, Portas recanted the unequivocal identification testimony he had given at trial and now maintained that both his out-of-court and in-court identifications of Landano had been obtained by suggestive techniques.

The state post-conviction court found that Portas's recantation testimony was not credible. Although the district court conducted its own evidentiary hearing and took testimony from Portas, it determined that the state court's credibility finding was entitled to a presumption of correctness under 28 U.S.C. § 2254(d) and that Landano had not overcome that presumption. Because under this analysis Portas's recantation testimony could not be credited, the court concluded that Landano had not established the necessary factual predicate to his *Brady* claim.

On appeal, Landano argues that the district court's deference to the state court's finding was improper under section 2254(d) because the hearing in state court was inadequate. In particular, he claims that the state court prevented full development of a factual record by allowing counsel for the State to inhibit Portas's recantation testimony with threats of a perjury indictment and by denying Landano's request for pre-hearing discovery of certain documents relating to Portas's pre-trial photographic identification of Landano. We shall assume that Landano's argument raises a question of law as to which our review is plenary.

We conclude that the state court hearing comported with due process standards and was otherwise "full, fair, and adequate." 28 U.S.C. § 2254(d)(6). As to the alleged harassment of Portas at the hearing, we cannot see how the State's threats to Portas could possibly have inhibited the fact-finding process. At the hearing, Portas thoroughly repudiated his trial testimony, and Landano does not suggest that Portas's recantation would have been more complete or more credible in the absence of the State's threats to indict Portas for perjury. Indeed, that Portas proceeded with his recantation in the face of such threats very likely enhanced his credibility. As to the state court's refusal to permit discovery, we do not believe Landano was prejudiced by his inability to gain access to the requested documents. The district court granted Landano the discovery he had been denied in state court, and the documents produced lend only weak support to Portas's recantation testimony. It is clear from a reading of the state court's written opinion that the court rejected Portas's recantation testimony because it found the testimony itself implausible, and there is no indication that the documents in question would have caused the court to regard the testimony more favorably.

■ Landano's final argument in connection with Portas's recantation is that, if section 2254(d) is properly read to mandate deference to the state court's credibility finding here, then that provision is unconstitutional as applied to this case. For this proposition he cites dicta in *Fay v. Noia,* 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963). In that case, the Court noted that at common law the writ of habeas corpus was available to remedy governmental restraints contrary to "fundamental law." *Id.* at 405, 83 S.Ct. at 831. The Court then suggested that Congressional action to prevent the courts from giving the writ its full common-law scope might amount to an unconstitutional suspension of the writ. *Id.* at 405–06, 83 S.Ct. at 830–31; U.S. Const. art. I, § 9, cl. 2. According to Landano, his continued incarceration constitutes a violation of fundamental law in light of Portas's recantation, and section 2254(d) is unconstitutional to the extent that it prevented the district court from granting him relief.

We assume the *Fay* dicta to be binding in this case, but we nevertheless reject Landano's argument. Courts have historically viewed recantation testimony with great suspicion. *See e.g., United States v. Kearney,* 682 F.2d 214, 219 (D.C.Cir.1982). Thus, we doubt that the failure to grant a petition for post-conviction relief based

solely on the recantation of a prosecution witness would have been regarded at common law as a violation of fundamental law. Moreover, in this case Portas's recantation testimony did not affirmatively exonerate Landano but merely called into question the validity of Portas's identification of Landano. In these circumstances, the district court's deference to the state court's assessment of Portas's recantation was not unconstitutional.

### B.

■ Landano asserts that habeas relief must be granted because the prosecution violated the *Brady* standard by withholding from the defense certain information concerning Allen Roller.

At trial, Roller testified that he had plead *non vult* to a felony murder charge in connection with the robbery of the check cashing service. He also testified that he was cooperating with the State pursuant to assurances that he would not receive a sentence in excess of thirty years and that the State would dismiss charges against him stemming from the robbery of a Jersey City bar. He did not allude to any other charges pending against him. Roller admitted that Victor Forni had participated in the planning of the Kearny robbery, but he denied that Forni had played any role in the execution of the crime. Roller also denied having participated with Forni in other crimes.

After the trial, it came to light that Roller had been linked to two armed robberies in Perth Amboy, New Jersey, that occurred before the Kearny robbery. Landano moved for a new trial on the basis of this information. After holding hearings, the trial court found that before Landano's trial a witness to the Perth Amboy robberies had tentatively identified Roller, Forni, and Bruce Reen as possible perpetrators of those crimes. The court also found that the prosecutor in Landano's case had had constructive knowledge of the information linking Roller to the Perth Amboy robberies.

The prosecution's non-disclosure of evidence amounts to a *Brady* violation only if the evidence is both exculpatory and material. Evidence is "material" in this context "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *United States v. Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985) (opinion of Blackmun, J., joined by O'Connor, J.); *accord id.* at 685 (opinion of White, J., joined by Burger, C.J., and Rehnquist, J.) (agreeing with Justice Blackmun's definition of materiality).

The district court determined that the evidence of Roller's possible participation in the Perth Amboy robberies was exculpatory, but the court went on to hold that the evidence was not material. Accordingly, the court concluded that no *Brady* violation had occurred. Whether evidence is material for purposes of the *Brady* analysis is a mixed question of law and fact. *Carter v. Rafferty,* 826 F.2d 1299, 1306 (3d Cir.1987), *cert. denied,* — U.S. ——, 108 S.Ct. 711, 98 L.Ed.2d 661 (1988).

We agree with both parts of the district court's analysis. The evidence was exculpatory because the defense could have used it to impeach Roller on cross-examination, *see Giglio v. United States,* 405 U.S. 150, 154, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972), and perhaps also as substantive evidence that Roller and Forni generally operated together, *see* N.J. R.Evid. 55. The evidence was relevant both to Roller's credibility and to Landano's defense that Forni, rather than Landano, had accompanied Roller during the robbery and had murdered Officer Snow.

Nevertheless, we do not believe that the evidence was material under the *Bagley* standard. Roller was presented to the jury as a convicted felon, so evidence tending to link him with another crime would have had at best a marginal effect on the jury's assessment of his general credibility. The materiality question is a somewhat closer one to the extent that the evidence would have permitted an inference that Roller and Forni operated together on other occasions

and therefore operated together in carrying out the Kearny robbery. We note, however, that such an inference would have been at best a tenuous one.[1] Moreover, any such inference would have been directly at odds with other, stronger evidence implicating Landano in the crime, e.g., Portas's testimony. We thus conclude that there is no reasonable probability that an acquittal would have resulted had the evidence been made available to the defense.

### C.

■ Landano next argues that the prosecution violated the *Brady* rule by withholding evidence of an investigation into allegedly questionable dealings on the part of Jacob Roth and his check cashing service. On the basis of comments made in a 1981 lecture by the prosecutor who had tried Landano's case, the district court found that such an investigation in fact took place before the trial and that Roth was aware that he was under suspicion of wrongdoing. The court then determined that information as to the investigation of Roth was exculpatory but not material. Hence, the court found no *Brady* violation.

Evidence of the investigation of Roth was exculpatory because the defense could have used such evidence at trial to impeach Roth: that Roth was the subject of a state investigation would have permitted an inference that his testimony was not credible because it had been secured by the State's implicit or explicit coercion. *See State v. Mazur*, 158 N.J.Super. 89, 385 A.2d 878, 886–87 (App.Div.1978). The information, however, cannot be considered material under the *Bagley* standard. Roth's credibility was already undermined by the fact that his recollection of the robbery was fundamentally at odds with that of Roller and the employee of the nearby warehouse. Roth maintained that Landano was the perpetrator who went inside the trailer; Roller testified that Landano stayed out-

side, and the warehouse employee stated that a dark-haired man (who could not have been Roller) remained outside. Moreover, although at trial Roth characterized his earlier out-of-court identification of Landano as "positive," two detectives testified that Roth's identification had been only tentative. Thus, even if the defense had been able to impeach Roth with the evidence of the investigation, its marginal effect in diminishing Roth's perceived credibility would have been negligible. In view of the other evidence supporting the guilty verdict, we find no reasonable probability that disclosure of the evidence in question would have produced a different result at trial.

### D.

■ Finally, Landano contends that the trial court's supplemental charge to the jury violated his sixth amendment right to a jury trial and his fourteenth amendment due process rights. The district court rejected this claim. Our review is plenary.

After deliberating for approximately two days, the jury informed the trial court that it was unable to reach a verdict. The court then delivered a supplemental charge and ordered the jurors to continue their deliberations. The gist of Landano's argument is that the court improperly coerced a unanimous verdict by instructing the jurors in the supplemental charge that "this case at a future time must be decided." Landano observes that that statement was false because, had a hung jury resulted, the prosecutor may have chosen not to re-try him. He asserts that the court's "misrepresentation" amounted to constitutional error.

Viewing the supplemental charge as a whole, we conclude that Landano's assertion is unfounded. The charge did not suggest that the case "had to be decided" by the particular jury hearing the charge. Rather, it acknowledged the possibility that those jurors might not be able to reach a unanimous verdict, and it fairly informed

---

1. It was undisputed at trial that the murder weapon in the Kearny robbery was a gun belonging to Forni. That fact, however, is just as easily explained by the prosecution's version of the crime—that Forni helped plan the robbery but did not assist in its execution—as by Landano's theory that Forni was one of the gunmen.

them that they had a duty to reach a verdict only if that was possible. The court's implication that the case would inevitably be re-tried in the event of a hung jury may not have been literally correct, but we cannot say that the inaccuracy was of constitutional dimensions.

### III. *Conclusion*

For the foregoing reasons, we shall affirm the order of the district court denying habeas corpus relief.