NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 06-5035
_____

UNITED STATES OF AMERICA

v.

DERYCK GRAFTON JACKSON,
                                  Appellant
_____

On Appeal from the District Court of the Virgin Islands
Division of St. Thomas and St. John
D.C. Criminal No. 03-cr-00034-02
(Honorable James T. Giles)
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
April 15, 2011
Before:  SCIRICA, RENDELL and AMBRO, *Circuit Judges*.

(Filed: May 12, 2011)
_____

OPINION OF THE COURT
_____

SCIRICA, *Circuit Judge*.

Deryck Jackson was convicted after a jury trial on one count of possession with

intent to distribute a controlled substance, in violation of 21 U.S.C. § 841(a)(1), and three

counts of conspiracy to possess with intent to distribute cocaine, in violation of 21 U.S.C.

§§ 841(b)(1)(B), 846 and 963, and of aiding and abetting the same, in violation of 18

U.S.C. § 2. The District Court for the District of the Virgin Islands sentenced Jackson to a seventy-five month term of imprisonment to be followed by four years of supervised release and levied both a $400 special assessment and a $400 fine. On appeal, Jackson argues (1) the court abused its discretion in denying his motion for a new trial on the basis of newly discovered evidence; and (2) the prosecutor's failure to correct false testimony deprived him of his due process right to a fair trial. Because Jackson is entitled to relief on neither of these grounds, we will affirm.

I.

The jury returned its guilty verdict on March 17, 2004. On April 1, 2004, Jackson filed a motion for a new trial or, alternatively, to dismiss with prejudice, in which he alleged the jury verdict "was secured through active governmental misconduct and impropriety." Specifically, he argued two material witnesses had provided false testimony at the behest of the prosecution. In support of his motion, Jackson attached an unsworn letter from one of the witnesses, Donovan Dailey, who testified at trial he had already been sentenced for his role in the drug importation scheme and did not anticipate receiving additional benefits in exchange for his testimony. In his letter, Dailey claimed he testified as directed by the government only after having been threatened with additional charges for his role in an unrelated matter. Moreover, Jackson alleged the government had assured the second witness, Damian Daniel, that he would not be charged in this case. Such an understanding would have belied the government's

argument, offered in its closing, that Daniel's testimony was credible precisely because he was still theoretically susceptible to prosecution.

The District Court denied Jackson's motion on May 11, 2004. Significantly, it reasoned Jackson had given "no indication of exactly what testimony of Donovan Dailey and Damian Daniel was false," and it concluded Jackson's allegations "do not rise to the threshold [that] would require any evidentiary hearing."

Jackson renewed his motion on May 25, 2004. In support, he attached as exhibits four additional unsworn letters from those purporting to possess material information. Both Robert La Ware and Vernon S. Morgan, a co-defendant who testified at Jackson's trial, stated Daniel was aware prior to taking the witness stand that he would not be charged because his stepfather, who was friendly with a senior Drug Enforcement Administration agent, had intervened on his behalf. Russell Robinson wrote that Kendrick Vanterpool, a co-conspirator with whom he was incarcerated at Guaynabo Metropolitan Detention Center, acknowledged having been "instructed" as to how to testify before the grand jury in order to ensure Jackson would be indicted. At trial, Vanterpool testified he had met with the prosecutor only twice and could not remember whether he had spoken with DEA agents on more than five occasions. In his letter, Robinson stated Vanterpool admitted having been flown to St. Thomas "at least fourteen times to be interviewed, prepared and directed as to what to say and not to say." And Lenford Rogers wrote he had agreed to testify in the manner suggested by the prosecution only after having been threatened with incarceration.

3

On July 6, 2006, Jackson supplemented his renewed motion with an affidavit from Esteban Rosario, a correctional officer at St. Croix Golden Grove Prison. Rosario wrote that Dailey had confided to him on numerous occasions that the government induced him to testify against Jackson, "an individual that he didn't know," by threatening him with a protracted sentence in an undesirable facility.

The District Court denied Jackson's motion on August 30, 2006. In finding Jackson could not satisfy "any of the required prongs for new trial based upon false testimony," the court concluded the "overwhelming . . . number of witnesses, corroborating testimony, and physical evidence [were] such that the jury's verdict would most likely have been the same" even if the "allegedly challenged testimony" of Rogers and Vanterpool were to be discounted. The court noted Vanterpool had not personally recanted his testimony and opined that, if examined, Vanterpool "would be pressed to explain various details of his self-incriminating trial testimony and motivation for recanting sworn testimony and for subjecting himself to the separate crime of perjury." Furthermore, the court described Rogers' "purported recantation" as "inherently suspicious," "inconsistent with corroborating physical evidence received at trial tying the defendant to the transaction," and "implausibly inconsistent with the testimony of other co-conspirators." Again, the court determined no evidentiary hearing was warranted.

The court issued a supplemental order on August 31, 2006. It stressed the jury's verdict had not been "secured through active governmental misconduct and impropriety, including perjurious testimony, since there is no competent evidence submitted by

4

defendant of such misconduct." It discredited Dailey's "purported recantation" and found that "a not so close reading of [Dailey's statement] shows that he has neither stated that he was told by agents to testify falsely nor has he stated that he did, in fact, testify falsely." Moreover, the court discerned "no factual basis" for Jackson's contention that DEA agents had notified Daniel he would not be charged and "no evidence that Daniel[ ] was a criminal co-conspirator."

Jackson was sentenced on November 30, 2006, and he filed a timely notice of appeal the following day. Having received credit for time served, he completed his term of imprisonment and was released from the custody of the Federal Bureau of Prisons on September 18, 2009.[1]

## II.

## A.

Upon a defendant's motion filed within three years of a guilty verdict, a district court may order a new trial on the ground of newly discovered evidence "if the interest of justice so requires." Fed. R. Crim. P. 33. Motions for a new trial on the basis of after-discovered evidence "are to be granted with the greatest of caution." *United States v. Kozak*, 438 F.2d 1062, 1067 (3d Cir. 1971). "Courts have historically viewed recantation testimony with great suspicion." *Landano v. Rafferty*, 856 F.2d 569, 572 (3d Cir. 1988); *see also United States v. Miner*, 131 F.3d 1271, 1273 (8th Cir. 1997) ("Courts look upon

---

[1] The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction over the court's final decision under 28 U.S.C. § 1291.

recantations with suspicion."); *Spence v. Johnson*, 80 F.3d 989, 997 (5th Cir. 1996) ("recanting affidavits and witnesses are viewed with extreme suspicion by the courts" (internal quotation omitted)); *United States v. Chambers*, 944 F.2d 1253, 1264 (6th Cir. 1991) ("Recanting affidavits and witnesses are viewed with extreme suspicion."). Consequently, courts have proven "particularly reluctant to grant such motions where the newly discovered evidence consists of a witness recantation." *United States v. Di Paolo*, 835 F.2d 46, 49 (2d Cir. 1987) (internal quotation omitted).

We review a district court's denial of a motion for a new trial for abuse of discretion. *Curley v. Klem*, 499 F.3d 199, 206 (3d Cir. 2007). But when a district court's denial of a motion for a new trial "is based on application of a legal precept," our review is plenary. *Honeywell, Inc. v. American Standards Testing Bureau, Inc.*, 851 F.2d 652, 655 (3d Cir. 1988). Generally, we apply the test outlined in *United States v. Iannelli*, 528 F.2d 1290, 1292 (3d Cir. 1976), when determining whether a new trial should be granted in light of newly discovered evidence. Yet, in declaring Jackson incapable of satisfying "any of the required prongs for new trial based upon false testimony," the District Court cited to *United States v. Massac*, 867 F.2d 174, 178 (3d Cir. 1989), in which we reviewed a defendant's motion for a new trial based on the rule enunciated in *Larrison v. United States*, 24 F.2d 82, 87 (7th Cir. 1928). We noted in *Massac* that our Circuit has refrained from adopting the *Larrison* test, but we nevertheless proceeded to review the district court's application of that standard for abuse of discretion because the parties had agreed upon *Larrison* as the appropriate analytical framework. 867 F.2d at 178. Jackson

6

contends the court's invocation of *Larrison* was an erroneous "application of a legal precept" sufficient to justify application of the more searching *de novo* standard.

Under *Iannelli*, a district court may, in its discretion, order a new trial based on newly discovered evidence if the defendant satisfies a five-pronged test:

> (a) the evidence must be in fact, newly discovered, i.e. discovered since the trial; (b) facts must be alleged from which the court may infer diligence on the part of the movant; (c) the evidence relied on must not be merely cumulative or impeaching; (d) it must be material to the issues involved; and (e) it must be such, and of such nature, as that, on a new trial, the newly discovered evidence would probably produce an acquittal.

528 F.2d at 1292. By contrast, the approach announced in *Larrison* requires a defendant to satisfy a three-part standard:

> (a) The Court is reasonably well satisfied that the testimony given by a material witness is false. (b) That without it the jury might have reached a different conclusion. (c) That the party seeking the new trial was taken by surprise when the false testimony was given and was unable to meet it or did not know of its falsity until after the trial.

24 F.2d at 87–88. Critically, as is the case with any multi-factor test, failure to satisfy one element "is a sufficient basis to deny a motion for a new trial." *United States v. Jasin*, 280 F.3d 355, 365 (3d Cir. 2002) ("Although it may be advisable for a district court to analyze each prong of the *Iannelli* test after finding that one factor has not been met, such an analysis of the remaining factors is not required . . . .").

In denying Jackson's motion, the District Court wrote: "The trial evidence against defendant is overwhelming as to the number of witnesses, corroborating testimony, and physical evidence such that the jury's verdict would most likely have been the same [ ] [w]ithout the allegedly challenged testimony." Irrespective of the case to which the

7

district court cited in support of its subsequent holding that Jackson was unable to meet "any of the required prongs for a new trial based upon false testimony," the court's articulation of the standard for assessing the likely impact on the jury's verdict was consistent with *Iannelli*. Indeed, the *Larrison* standard is less stringent on this front than is the *Iannelli* standard—rather than having to demonstrate newly discovered evidence would "probably produce an acquittal," a defendant whose motion is being governed by *Larrison* need only show that, without the benefit of materially false testimony, the jury "might have reached a different conclusion." *Compare Iannelli*, 528 F.2d at 1292 *with Larrison*, 24 F.2d at 87-88. Newly discovered evidence "likely" to have no effect on a jury's guilty verdict necessarily would not "probably produce an acquittal." Therefore, we conclude the court employed the proper legal standard.

The court's denial of Jackson's motions for a new trial fell within the proper exercise of its discretionary powers. Notwithstanding Jackson's post-verdict submissions, the court concluded the "overwhelming . . . number of witnesses, corroborating testimony, and physical evidence" proving Jackson's complicity in the trafficking scheme were sufficient to support the jury's verdict. The court correctly conducted a credibility determination as part of its inquiry, *see United States v. Kelly*, 539 F.3d 172, 189 (3d Cir. 2008) ("To make a determination under [*Iannelli's* probability-of-acquittal] standard, the district court cannot view the proffered testimony in a vacuum; it must weigh the testimony against all of the other evidence in the record, including the evidence already weighed and considered by the jury in the defendant's first trial."), and it properly

8

regarded the "purported recantation[s]" with a healthy measure of skepticism, *see Landano*, 856 F.2d at 572. The court was not required to hold an evidentiary hearing before ruling on Jackson's motions for a new trial. *United States v. Herman*, 614 F.2d 369, 372 (3d Cir. 1980). Having presided over the trial and being intimately familiar with the record, the court was well-situated to rule on the implications of Jackson's belated submissions, *see United States v. Marino*, 868 F.2d 549, 557 (3d Cir. 1987); *United States v. Provenzano*, 521 F. Supp. 403, 408 (D.N.J. 1981), and it did not abuse its discretion in declining to conduct an evidentiary hearing, *see United States v. Hines*, 628 F.3d 101, 104 (3d Cir. 2010) (setting forth the standard of review)

Therefore, we conclude the District Court did not abuse its discretion in denying Jackson's motions for a new trial.

### B.

Next, Jackson contends the government's failure to correct false testimony deprived him of his right to a fair trial. *See Napue v. Illinois*, 360 U.S. 264, 269 (1959). After closely reviewing Jackson's submissions, however, the District Court concluded Jackson had produced "no competent evidence" tending to show the prosecution had procured its conviction through "active . . . misconduct and impropriety, including perjurious testimony." For largely the same reasons outlined above, we agree with the District Court's finding. We therefore conclude Jackson's due process rights were not violated, and we will deny his appeal for relief on this ground.

III.

For the foregoing reasons, we will affirm the judgment of conviction and sentence.