897 F.2d 661
 Vincent James LANDANO, Respondent,
v.
John J. RAFFERTY, Superintendent, (East Jersey State
Prison), Peter Perretti, (Attorney General, State of New
Jersey), Leslie Fay Schwartz, (Deputy Attorney General), The
Office of the Hudson County Prosecutor, Kearney Police
Department, Newark Police Department, Jersey City Police
Department and Perth Amboy Police Department, Petitioners No. 89-5504,
Honorable H. Lee Sarokin, U.S. District Court Judge, Nominal
Respondent.
Vincent James LANDANO
v.
John J. RAFFERTY, Superintendent, Rahway State Prison,
and
Irwin I. Kimmelman, Attorney General of the State of New Jersey.
Vincent James LANDANO
v.
John J. RAFFERTY, Superintendent (East Jersey State Prison),
Peter Perretti, (Attorney General, State of New Jersey),
Leslie Fay Schwartz, (Deputy Attorney General), the Office
of the Hudson County Prosecutor, Kearney Police Department,
Newark Police Department, Jersey City Police Department and
Perth Amboy Police Department.
Appeal of John J. RAFFERTY, Superintendent, East Jersey
State Prison, and Peter N. Perretti, Jr., Attorney
General of New Jersey, in Nos. 89-5625
and 89-5638.
 Nos. 89-5504, 89-5625 and 89-5638.
 United States Court of Appeals,
Third Circuit.
 Argued Dec. 12, 1989.
Decided Feb. 27, 1990.
As Amended March 1, 1990.
Rehearing and Rehearing In Banc Denied April 3, 1990.
 
 Peter N. Perretti, Jr., Atty. Gen. of N.J., Richard J. Hughes Justice Complex, Trenton, N.J., for appellants.
 Carol M. Henderson (argued), Catherine A. Foddai, Richard W. Berg, Deputy Attys. Gen., Div. of Criminal Justice, Appellate Section, Trenton, N.J., for petitioners-appellants.
 Nancy Erika Smith (argued), Neil Mullin, Kevin Kiernan, Jon W. Green, Smith, Mullin & Kiernan, West Orange, N.J., for respondent-appellee.
 Before HUTCHINSON, COWEN and ROSENN, Circuit Judges.
 OPINION OF THE COURT
 COWEN, Circuit Judge.
 
 
 1
 The various appellants-petitioners in this action, whom we will refer to collectively as "the State of New Jersey," appeal an order of the district court conditionally granting the petition of Vincent James Landano ("Landano") for a writ of habeas corpus pursuant to 28 U.S.C. Sec. 2254 (1982). The writ was issued incident to Landano's successful motion under Fed.R.Civ.P. 60(b) for relief from an earlier judgment of the district court denying his petition. Landano's 60(b) motion, which in effect renewed his initial petition and raised additional claims, was premised on alleged prosecutorial fraud. Because we find that Landano has not satisfied the exhaustion requirement of section 2254 with respect to certain additional claims he has raised in his 60(b) motion, we will reverse the district court's order granting the conditional writ, and remand with directions to dismiss the petition and vacate all orders entered subsequent to the court's initial order denying Landano's petition.
 
 I.
 
 2
 On August 13, 1976, two gunmen robbed the Hi-Way Check Cashing Service in Kearney, New Jersey ("the Kearney robbery").[1] During the robbery, one of the gunmen shot and killed a Newark police officer. A Hudson County grand jury indicted Landano and three other men, Allen Roller ("Roller"), Victor Forni ("Forni") and Bruce Reen ("Reen"), for felony murder and other crimes stemming from the robbery. The trial of Forni and Reen was severed from that of Landano and Roller. However, prior to the commencement of the Landano and Roller trial, and pursuant to a plea agreement with the prosecutor, Roller pled non vult to the felony murder charge and testified against Landano.
 
 
 3
 Evidence at Landano's trial showed that the Kearney robbery was the work of a motorcycle gang known as "The Breed." According to the testimony of Breed members and affiliates, the gang frequently planned and executed armed robberies in the Staten Island area. The evidence also revealed that Roller, the president of The Breed's Staten Island chapter, and Forni, who was not a Breed member but reputedly responsible for organizing most of The Breed's criminal activities, conceived of the plan to rob the Hi-Way Check Cashing Service.
 
 
 4
 It was undisputed that Landano was neither a Breed member nor affiliate. However, Roller testified that Landano was specifically recruited for the Kearney job because he was a friend of Forni. Roller insisted at trial that although Forni had orchestrated the robbery, Forni did not participate in the actual execution of the crime.
 
 
 5
 According to the testimony at the trial, two men arrived at the Hi-Way Check Cashing Service in the early morning hours of August 13. One of the perpetrators entered the Service's trailer/office, while the other remained outside. During the robbery, Officer John Snow pulled into the parking lot in his patrol car. The perpetrator who had remained outside walked up to the patrol car and shot Officer Snow at close range, killing him. The two perpetrators then sped off in a green Chevrolet.
 
 
 6
 Landano was linked to the crime through the testimony of several witnesses. Roller testified that he and Landano were the perpetrators and that he was the individual who had entered the trailer while Landano remained outside. Roller also told the court that Landano informed him later that he had to "ice" or "waste" the police officer.
 
 
 7
 Jacob Roth ("Roth"), the owner of Hi-Way Check Cashing Service, also identified Landano as a participant in the robbery, but Roth testified that Landano had been the individual who entered the trailer, not the one who remained outside. In addition, Roth was able to observe the license plate of the automobile used by the perpetrators.
 
 
 8
 Joseph Pascuiti ("Pascuiti"), an employee of an adjacent warehouse, testified that he observed from his workplace window a dark haired man approach Officer Snow's patrol car. However, Pascuiti then turned away from the window. When he heard gunshots and again focused his attention on the parking lot, Pascuiti saw a green Chevrolet, driven by the same dark haired man who had approached the patrol car, pulling hurriedly out of the parking lot. Pascuiti was unable to identify the dark haired man as Landano.
 
 
 9
 In attempting to escape from the crime scene, the perpetrators came upon a blocked intersection. The efforts of the driver to maneuver through the traffic attracted the attention of Raymond Portas ("Portas"), a truckdriver sitting in the stalled traffic. Portas testified that he saw a green Chevrolet pull out of the line of traffic and proceed along adjacent railroad tracks. Portas' description of the license plate number matched Roth's. At trial, Portas was able to identify Landano as the driver of the car. Furthermore, Portas stated that he had also picked Landano's photograph out of an array shown to him at a pre-trial identification session.
 
 
 10
 Thus, the evidence at Landano's trial linking him to the crime included: Roller's testimony naming Landano as his partner; Roth's identification of Landano as the participant who entered the trailer; Pascuiti's testimony that the killer of Officer Snow was the driver of the green Chevrolet; and Portas' testimony that the driver of the green Chevrolet was Landano. After approximately two days of deliberations, the jury informed the court that it was unable to reach a unanimous verdict on any of the submitted counts. At that point, the court delivered a supplemental charge and ordered the jurors to continue their deliberations. One hour later the jury returned a verdict finding Landano guilty on all counts. On May 17, 1977, Landano was sentenced to life imprisonment on the felony murder count and a consecutive term of seven to fifteen years on the remaining counts.
 
 
 11
 Landano filed a Notice of Appeal on June 29, 1977. On September 26, 1978, Landano also filed a motion in the Superior Court of New Jersey, Appellate Division, seeking remand to the trial court for consideration of his motion for a new trial. The motion was based on three grounds: (1) Roller's alleged prison recantation in which he allegedly told two other prisoners that he had committed the Kearney robbery with someone other than Landano; (2) newly discovered evidence allegedly linking Forni to a Jersey City robbery that Roller had admitted committing at Landano's trial, but with someone other than Forni; (3) and a Brady[2] claim alleging that the prosecutor had suppressed evidence possibly linking Roller, Forni and Reen to one or two Perth Amboy robberies occurring sometime prior to the Kearney holdup.
 
 
 12
 An order granting Landano's motion was entered on October 17, 1978. Three days of evidentiary hearings were then held by the trial court, after which Landano's motion was denied. The Appellate Division subsequently both denied Landano's direct appeal and affirmed the trial court's denial of his motion for a new trial. Landano's petition for certification was denied by the New Jersey Supreme Court.
 
 
 13
 On March 31, 1982, Landano filed a petition for post-conviction relief. According to Landano, the issues raised in this petition were the following:
 
 
 14
 (1) Whether [the trial court's] "Allen" charge[3] required vacation of the conviction.
 
 
 15
 (2) Whether newly discovered evidence as to [the] coercion of ... Roth in obtaining identification testimony against Landano required vacation of the conviction.
 
 
 16
 (3) Whether newly discovered evidence that the prosecutor had coached ... Portas in obtaining his photographic and in-court identification of ... Landano required vacation of the conviction.
 
 
 17
 (4) Whether newly discovered evidence that the State had concealed [Officer] Snow's connection to ... Roller and that ... Roller had perjured himself at trial about such connection required vacation of the conviction.
 
 
 18
 (5) Whether the sheer accumulation of prosecutorial misconduct compels the overturning of ... Landano's conviction ...[4]
 
 
 19
 [ (6) ] Whether the State's loss or destruction of two photographs of the display shown ... Portas in obtaining an identification of ... Landano required vacation of the conviction.
 
 
 20
 [ (7) ] Whether the State's failure to sequester ... Portas so that he could not view the defendant as he was led into the trial court just prior to Portas' in-court identification testimony unduly tainted Portas' identification and otherwise deprived defendant of a fair trial.
 
 
 21
 App. at 484 (Landano's Brief in Support of his appeal of the trial court's denial of his petition for post-conviction relief). Issues (3), (6) and (7) arose out of Portas' recantation of his trial testimony. As part of his recantation, Portas has stated under oath that when he was asked initially to identify the driver of the getaway car he selected someone other than Landano from the array and that only later, after the police had removed the selected photograph and told him to continue looking at the array, did he tentatively identify Landano as resembling the driver. In addition, Portas has stated that he did not recognize Landano when Landano and his attorney walked past him in the courthouse hallway prior to Portas' in-court identification until a police officer told him immediately after the encounter that one of the two men was "our man."
 
 
 22
 The trial court conducted evidentiary hearings pursuant to this petition. Thereafter, the court issued a series of letter opinions, ultimately denying Landano's requested relief. The court's decision was based primarily on its finding that Portas' recantation was incredible. On January 30, 1984, the Appellate Division denied Landano's appeal, and on June 13, 1984, the Supreme Court of New Jersey denied certification. The issues raised by Landano in the Appellate Division and in his petition for certification to the New Jersey Supreme Court were substantially the same as those raised in the trial court.
 
 
 23
 On October 10, 1985, Landano filed a petition for a writ of habeas corpus in federal court.
 
 
 24
 As grounds for relief [Landano] allege[d]: (1) that his due process rights to a fair trial were infringed by the admission of ... Portas' identification testimony; (2) that the state unlawfully suppressed exculpatory and material evidence that would have impeached the testimony of codefendant ... Roller; (3) that the state unlawfully suppressed exculpatory and material evidence that would have impeached the testimony of ... Roth ...; (4) [and] that the state court's coercive charge to the jury violated [Landano's] Sixth Amendment right to an impartial jury.
 
 
 25
 Landano v. Rafferty, 670 F.Supp. 570, 573 (D.N.J.1987), aff'd, 856 F.2d 569 (3d Cir.1988), cert. denied, --- U.S. ----, 109 S.Ct. 1127, 103 L.Ed.2d 189 (1989). These four claims had all been properly exhausted in the state proceedings initiated by Landano. After holding its own evidentiary hearing on issue (1), the district court found that Portas' recantation was credible. However, the court recognized that it was bound by the prior credibility finding of the state trial court and, therefore, found no due process violation as a result of the admission of Portas' identification. Moreover, the court found that although relevant impeachment evidence of both Roller and Roth had been suppressed by the State, such information was not material in light of Pascuiti's trial testimony linking the killer of Officer Snow to the driver of the getaway car and Portas' identification of Landano as that driver. Id. at 585-88.[5] The district court reluctantly denied the petition. This Court affirmed, Landano v. Rafferty, 856 F.2d 569 (3d Cir.1988), and the United States Supreme Court denied certiorari. Landano v. Rafferty, --- U.S. ----, 109 S.Ct. 1127, 103 L.Ed.2d 189 (1989).
 
 
 26
 On June 7, 1989, Landano filed with the district court a motion to reopen the previous habeas proceeding, pursuant to Fed.R.Civ.P. 60(b), and an ex parte application for a temporary restraining order. The motion requested the court to vacate the prior judgment because of fraud on the part of the prosecution. Specifically, Landano alleged that state investigation reports, recently obtained by Landano's own investigator, revealed that the prosecution had intentionally suppressed information that at least two witnesses had identified Forni as the driver of the getaway car. Landano sought relief in the form of an order to show cause why a writ of habeas corpus should not issue, and a temporary restraining order directing that the United States Marshal seize all files pertaining to the Kearney robbery maintained by the New Jersey Attorney General, the Hudson County Prosecutor, and several police departments.
 
 
 27
 The ex parte application for a temporary restraining order was granted by the district court on June 8, 1989, and Landano's counsel thereafter reviewed all of the files, except for portions that the State of New Jersey claimed were protected by work product privilege or confidentiality. At a hearing on June 14, the State presented the district court with a list of items deemed privileged or confidential. After reviewing these documents in camera, the district court granted in part and denied in part the State's claims.
 
 
 28
 On June 28, 1989, the district court filed an order to show cause why a writ of habeas corpus should not issue. After taking submissions from the parties and hearing oral argument, the district court, on July 27, 1989, vacated its earlier order denying Landano's petition and issued a conditional writ of habeas corpus requiring that the State of New Jersey release Landano unless a new trial is commenced within 90 days.[6] The basis for the district court's reversal of its previous decision was the discovery by Landano's counsel of two allegedly suppressed and exculpatory documents in the State's files.[7] The first document was a handwritten sheet of paper labeled "ID on Landano" allegedly containing information that several witnesses were suggestively shown a single photograph of Landano but even so rejected it as being a likeness of one of the perpetrators. Significantly, one of the witnesses identified in the document is Pascuiti, a key witness for the State. The second document is a Kearney Police Continuation Report containing an apparent identification of Forni as the driver of the getaway car by an eyewitness named "Joseph Pasapas."[8]
 
 
 29
 After finding that both of these documents had indeed been suppressed, the district court determined that the information contained in both of the documents was also material. Importantly, the court's materiality analysis of the "ID on Landano" document required a simultaneous re-evaluation of its earlier analysis of the suppression claims raised in Landano's initial habeas corpus petition:
 
 
 30
 The court prefaces its discussion of the materiality of the [handwritten "ID on Landano" document] by noting that consideration of the case against Landano "as a whole" necessarily includes the court's conclusions in Landano, 670 F.Supp. at 585, 588, regarding the suppression of evidence which could have impeached the testimony of Roller and Roth at trial.
 
 
 31
 . . . . .
 
 
 32
 The evidence at trial linking Landano to the crime consisted of the testimony of Portas ... and the testimony of Roller and Roth. In its prior opinion, the court held that the suppression of evidence which impeached the testimony of Roller and Roth was not material in light of the other evidence linking Landano to the murder. That "other evidence" is now called into question, and thus the court's materiality determination regarding the suppression of impeachment evidence against Roller and Roth must also be reevaluated. Such impeachment evidence becomes material when considered in light of facts indicating that Pascuiti, the State's only witness to the shooting, may have ruled out Landano as the murderer.
 
 
 33
 Landano v. Rafferty, 126 F.R.D. 627, 648-49 (D.N.J.1989). The court argued that had the defense been apprised of the "ID on Landano" document, they could have used it to argue to the jury that Pascuiti had already ruled out Landano as the killer of Officer Snow. If the jury accepted this argument, then the State's case unravels:
 
 
 34
 In its prior opinion, this court noted that two witnesses testified that the killer of Officer Snow was also the driver of the getaway car. The prosecutor has already been found to have suppressed Brady material with respect to ... Roller, one of those two witnesses. The court could not find a Brady violation, however, because there was a second witness, Pascuiti, who testified that the killer and driver were one and the same, and a third witness, Portas, who had identified Landano as the driver. Now, the record supports an inference that the prosecutor suppressed Brady material with respect to Pascuiti's negative identification of Landano which, in turn, calls into question the credibility of Portas' identification.
 
 
 35
 Id. at 649.
 
 
 36
 The court gave a similar analysis for the "Joseph Pasapas" identification contained in the Kearney Police Continuation Report. If the person misnamed "Joseph Pasapas" is really Joseph Pascuiti, as the State contends, then had the defense known of this identification they could have rebutted Pascuiti's redirect trial testimony to the effect that he had never selected a photograph of Forni as resembling the driver of the green Chevrolet. Alternatively, if "Joseph Pasapas" is actually Gus Lapas, the owner of a coffee truck usually parked in the area near the Hi-Way Check Cashing Service, as Landano suggests, then such testimony at trial would have directly rebutted Portas' testimony that Landano was the driver of the getaway car. The district court concluded that under either theory there was a reasonable probability that had the information been turned over to the defense, the outcome of the trial would have been different. Id. at 653. After issuing its conditional writ, the district court entered an order on July 28 denying the State's motion for both a stay of the conditional writ and for release of its files.
 
 
 37
 The State of New Jersey now appeals the district court's order granting the conditional writ. The appeal of the conditional writ (No. 89-5638) has been consolidated with the State's petition for mandamus seeking an order that all documents seized pursuant to the district court's temporary restraining order of June 8 be returned to the State (No. 89-5625), and its appeal of the district court's denial of its claims of work product privilege and confidentiality (No. 89-5504).[9] This Court has jurisdiction pursuant to 28 U.S.C. Sec. 2253 (1982) and 28 U.S.C. Sec. 1291 (1982).
 
 II.
 
 38
 The first issue we confront in our consideration of the State's appeal is that of exhaustion. Title 28 U.S.C. Sec. 2254(c) (1982) requires a habeas petitioner to exhaust available state remedies before filing an action in federal court: "An applicant shall not be deemed to have exhausted the remedies available in the courts of the State ... if he has the right under the law of the State to raise, by any available procedure, the question presented." Moreover, this exhaustion requirement is applicable to new claims a habeas petitioner may raise in seeking relief from a final order under Fed.R.Civ.P. 60(b).[10] Pitchess v. Davis, 421 U.S. 482, 489-90, 95 S.Ct. 1748, 1752-53, 44 L.Ed.2d 317 (1975).
 
 
 39
 This Court has recognized that the exhaustion requirement is not jurisdictional, but arises rather from interests of comity between the state and federal systems. See, e.g., Bond v. Fulcomer, 864 F.2d 306, 309 (3d Cir.1989). Nevertheless, we have held that the requirement should be strictly adhered to because it expresses respect for our dual judicial system and concern for harmonious relations between the two adjudicatory institutions. See, e.g., United States ex rel. Trantino v. Hatrack, 563 F.2d 86, 95 (3d Cir.1977), cert. denied, 435 U.S. 928, 98 S.Ct. 1499, 55 L.Ed.2d 524 (1978). Accord Rose v. Lundy, 455 U.S. 509, 518, 102 S.Ct. 1198, 1203, 71 L.Ed.2d 379 (1982); Duckworth v. Serrano, 454 U.S. 1, 102 S.Ct. 18, 70 L.Ed.2d 1 (1981) (per curiam). In addition, strict compliance with the exhaustion requirement properly acknowledges that state courts, no less than federal courts, are bound to safeguard the constitutional rights of state criminal defendants, Irvin v. Dowd, 359 U.S. 394, 404-05, 79 S.Ct. 825, 831-32, 3 L.Ed.2d 900 (1959); Ex parte Royall, 117 U.S. 241, 251, 6 S.Ct. 734, 740, 29 L.Ed. 868 (1886), as well as increasing the likelihood that the factual allegations necessary for a resolution of the petitioner's constitutional claim will have been fully developed in state court, making federal habeas review more expeditious. Rose, 455 U.S. at 519, 102 S.Ct. at 1203.
 
 
 40
 This Court has also noted that the habeas petitioner bears the burden of proving that he has exhausted available state remedies. Santana v. Fenton, 685 F.2d 71, 73 (3d Cir.1982), cert. denied, 459 U.S. 1115, 103 S.Ct. 750, 74 L.Ed.2d 968 (1983); Brown v. Cuyler, 669 F.2d 155, 158 (3d Cir.1982) (per curiam). To demonstrate compliance, the petitioner must show that the claim he asserts in federal court has been "fairly presented" to the state courts. Picard v. Connor, 404 U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971); Ross v. Petsock, 868 F.2d 639, 641 (3d Cir.1989). To be "fairly presented," the federal claim must be the substantial equivalent of that presented to the state courts. Picard, 404 U.S. at 278, 92 S.Ct. at 513; Gibson v. Scheidemantel, 805 F.2d 135, 138 (3d Cir.1986).
 
 
 41
 This Court has interpreted substantial equivalence to mean that both the legal theory and the facts on which a federal claim rests must have been presented to the state courts. Ross, 868 F.2d at 641; Bond, 864 F.2d at 309; O'Halloran v. Ryan, 835 F.2d 506, 508 (3d Cir.1987); Gibson, 805 F.2d at 138. Accord Nadworny v. Fair, 872 F.2d 1093, 1096 (1st Cir.1989); Dispensa v. Lynaugh, 847 F.2d 211, 217 (5th Cir.1988); Wise v. Warden, Maryland Penitentiary, 839 F.2d 1030, 1033 (4th Cir.1988); Daye v. Attorney General of New York, 696 F.2d 186, 191 (2d Cir.1982), cert. denied, 464 U.S. 1048, 104 S.Ct. 723, 79 L.Ed.2d 184 (1984) (en banc) ("In order to have fairly presented his federal claim to the state courts the petitioner must have informed the state court of both the factual and the legal premises of the claim he asserts in federal court."). By requiring that the habeas petitioner provide the state courts with both the same legal theory and the same factual predicate underlying the constitutional argument, the federal court ensures that the same method of legal analysis that is used by the federal court in resolving the petitioner's claim was also readily available to the state court when it adjudicated the claim. Santana, 685 F.2d at 74; Zicarelli v. Gray, 543 F.2d 466, 472 (3d Cir.1976) (in banc) (citing Stanley v. Illinois, 405 U.S. 645, 658 n. 10, 92 S.Ct. 1208, 1216 n. 10, 31 L.Ed.2d 551 (1972) (dictum)). Cf. Anderson v. Harless, 459 U.S. 4, 6, 103 S.Ct. 276, 277, 74 L.Ed.2d 3 (1982) (per curiam) ("28 U.S.C. Sec. 2254 requires a federal habeas petitioner to provide the state courts with a 'fair opportunity' to apply controlling legal principles to the facts bearing upon his constitutional claim") (quoting Picard, 404 U.S. at 276-77, 92 S.Ct. at 512-13). In addition, the habeas petitioner must exhaust his state remedies as to each of his federal claims. If a habeas corpus petition contains both exhausted and non-exhausted claims the petition must be dismissed. Rose, 455 U.S. at 510, 102 S.Ct. at 1199; Santana, 685 F.2d at 73.
 
 
 42
 After a complete review of the record before us, cf. Ross, 868 F.2d at 640, we find that Landano has not exhausted his state remedies as to the additional Brady claims he now has asserted in connection with his Rule 60(b) motion. Landano concedes that none of the suppression claims he previously raised in his initial habeas petition specifically included the information he now claims was suppressed, i.e., the information contained in the handwritten "ID on Landano" document and the Kearney Police Continuation Report.[11] Landano's previous Brady claims were based on impeachment evidence that Roth was being investigated for "underworld" connections, impeachment evidence that Roller was involved in previous robberies with Forni, evidence that Portas selected a photograph of Forni when asked to identify the driver of the green Chevrolet, and evidence relating to the involvement of Officer Snow's son in The Breed motorcycle gang.
 
 
 43
 However, Landano argues, and the district court found, that he has exhausted his present Brady claims in two ways: (1) by generally alleging throughout his state court proceedings that the State of New Jersey joined with the true perpetrators of the crime in suppressing inculpatory evidence of Forni and exculpatory evidence of Landano, and (2) by specifically alleging in his post-conviction brief that the State of New Jersey made no eyewitness record of identifications of Forni.
 
 
 44
 However, these arguments misconstrue the controlling principles developed by both the Supreme Court and this Court on the issue of exhaustion. With regard to Landano's first argument, we believe that a general claim that the prosecutor has suppressed exculpatory information cannot satisfy the exhaustion requirement as to all subsequent Brady claims that a habeas petitioner may bring. As noted above, this Court has consistently held that in complying with the exhaustion requirement a habeas petitioner must not only provide the state courts with his legal theory as to why his constitutional rights have been violated, but also the factual predicate on which that legal theory rests. This requirement is especially appropriate in the context of an alleged Brady violation since the materiality of the suppressed information is determined by considering the strength of the state's case as a whole. United States v. Agurs, 427 U.S. 97, 112-13, 96 S.Ct. 2392, 2401-02, 49 L.Ed.2d 342 (1976). As is plainly evident from the district court's own opinion in the instant case, in making such a determination the court must conduct a fact-sensitive examination of the precise nature of the suppressed information, along with a delicate judgment as to whether there is a reasonable probability that had the suppressed evidence been disclosed, the outcome of the trial would have been different. Carter v. Rafferty, 826 F.2d 1299, 1306 (3d Cir.1987), cert. denied, 484 U.S. 1011, 108 S.Ct. 711, 98 L.Ed.2d 661 (1988) (citing United States v. Bagley, 473 U.S. 667, 672, 105 S.Ct. 3375, 3378, 87 L.Ed.2d 481 (1985)). If the specific nature of the Brady material underlying the petitioner's claim is not revealed to the state court, as in the instant case, the state court is effectively foreclosed from fully engaging in this type of an analysis. Under such circumstances, the state court has clearly not had "a 'fair opportunity' to apply the controlling legal principles to the facts bearing upon [the petitioner's] constitutional claim." Anderson, 459 U.S. at 6, 103 S.Ct. at 277 (emphasis added). See also Daye, 696 F.2d at 191 (a habeas petitioner "must have set forth in state court all of the essential factual allegations asserted in his federal petition; if material factual allegations were omitted, the state court has not had a fair opportunity to rule on the claim").
 
 
 45
 Landano's second argument is that his present Brady claims were exhausted when he alleged in his post-conviction brief, with appropriate citations to Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) and its progeny, that:
 
 
 46
 --Eyewitnesses were pressured, cajoled, or led into identification of Mr. Landano. In some cases no record was made of eyewitness identification of Forni.
 
 
 47
 App. at 399. We believe, however, that this portion of Landano's post-conviction brief can not suffice to exhaust his state remedies as to his present Brady claims for two compelling reasons. First, we re-emphasize that for the exhaustion requirement to be satisfied the claim that is presented to the federal courts must have been fairly presented to the state courts. For purposes of the exhaustion requirement, a "claim is composed of fact and law, and both must be presented to the state court before a reasoned decision can be made." O'Halloran, 835 F.2d at 510. The above-quoted portion of Landano's trial court brief appeared in the "Preliminary Statement" of his post-conviction brief.[12] The factual predicates for these allegations correspond to legal issues raised later in the brief: eyewitness Roth was pressured by the State into identifying Landano by means of a state investigation into his "underworld" connections; eyewitness Portas was led and cajoled by the State into identifying Landano by the improper removal of photographs from the array he examined and by the parading of Landano in front of Portas prior to his in-court identification; and the State made no record of eyewitness Portas' identification of Forni as the driver of the getaway car at his initial pre-trial identification session. These are clearly different factual predicates than the ones which comprise his present claims: a witness named "Joseph Pasapas" identified Forni as being the driver of the Kearney getaway car, and Pascuiti, as well as several other witnesses, were improperly shown a single photograph of Landano and rejected it. Since the factual predicates of Landano's various suppression allegations are substantially different, it is wrong to rigidly label them all as the same claim in order to satisfy the exhaustion requirement. See Humphrey v. Cady, 405 U.S. 504, 516 n. 18, 92 S.Ct. 1048, 1056 n. 18, 31 L.Ed.2d 394 (1972) ("The question ... is whether any of petitioner's claims is so clearly distinct from the claims he has already presented to the state courts that it may fairly be said that the state courts have had no opportunity to pass on the claim"). Cf. Gibson, 805 F.2d at 135 (no exhaustion when the state ineffectiveness of counsel claim was based on counsel instructing the petitioner to plead guilty to offenses which he claimed not to have committed, the petitioner not receiving the sentence which his counsel led him to believe he would receive if he pled guilty and the counsel's inadequate explanation of the plea bargain, while the federal ineffectiveness of counsel claim was based on counsel's failure to protect the petitioner's juvenile status); Zicarelli, 543 F.2d at 472-73 (no exhaustion when the state court sixth amendment claim was based on the failure of the petitioner's jury to be drawn from the county where the crime had been committed, while the federal court sixth amendment claim included allegations that the procedures employed by the state in assembling the jury violated the cross-section concept of the sixth amendment); Keller v. Petsock, 853 F.2d 1122, 1126-27 (3d Cir.1988) (the exhaustion requirement is not satisfied when petitioner's claim in federal court asserted that the trial court actually told the jury it would not entertain questions during their deliberations, while the state court claim simply asserted that at no time was the jury informed that they could direct questions to the court).[13] But cf. United States ex rel. Johnson v. Johnson, 531 F.2d 169, 172 (3d Cir.), cert. denied 425 U.S. 997, 96 S.Ct. 2214, 48 L.Ed.2d 823 (1976) (federal court ineffectiveness of counsel claim based on counsel's advice to petitioner not to testify and variance between opening remarks and trial strategy was exhausted even though state claim was primarily based on counsel's failure to adequately investigate alibi witness).[14] Any other result would deprive the New Jersey courts of the initial opportunity to pass upon and correct, if necessary, the alleged violations of Landano's constitutional rights occurring in their system.[15] Cf. Wilwording v. Swenson, 404 U.S. 249, 250, 92 S.Ct. 407, 408-09, 30 L.Ed.2d 418 (1971); Darr v. Burford, 339 U.S. 200, 204, 70 S.Ct. 587, 590, 94 L.Ed. 761 (1950) (overruled in other respects by Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963)).
 
 
 48
 There is an additional reason for rejecting Landano's second exhaustion argument. A careful reading of Landano's present Brady claims shows that neither involve the cajoling or pressuring of eyewitnesses by the State, nor do they involve the failure of the State of New Jersey to make a record of eyewitness identifications of Forni. Rather, the handwritten "ID on Landano" document contains alleged information that witnesses were shown a photograph of Landano, not Forni, and rejected it. Such misconduct by the police is certainly not alleged by Landano to have involved cajoling or pressure. On the other hand, the Kearney Police Continuation Report does contain an apparent identification of Forni by a witness, but importantly a record was made of this identification, i.e., this information is memorialized in the Continuation Report itself.[16] Therefore, the suppression theory embodied in the preliminary statement relied upon by Landano does not even cover the information that Landano now alleges was suppressed and thus the New Jersey courts could not have been expected, sua sponte, to have considered these claims. Gibson, 805 F.2d at 139.
 
 
 49
 The Supreme Court case on which Landano relies for his exhaustion argument, Vasquez v. Hillery, 474 U.S. 254, 106 S.Ct. 617, 88 L.Ed.2d 598 (1986), is inapposite. In Vasquez, the habeas petitioner presented, at every level in the state courts, an equal protection challenge to the discriminatory selection of his grand jury. Id. at 256, 106 S.Ct. at 619. After the petition asserting the same equal protection claim had been filed in federal court, the district court requested, under 28 U.S.C. Sec. 2254 Rule 7(b), that the petitioner submit three additional items of information: census data from the year 1900, three affidavits from black residents of the county indicating that they were available to serve, and a statistical analysis of the cumulative census data from 1900 to 1960.[17]
 
 
 50
 The State argued that this additional information rendered the equal protection claim non-exhausted. The Supreme Court disagreed, holding that the affidavits were not new evidence because the state courts had already found as a fact that no black had ever served on the grand jury and that this finding was binding on the federal courts. As for the statistical analysis, the Court noted that this information "added nothing to the case that this Court has not considered intrinsic to the consideration of any grand jury discrimination claim." Id. at 259, 106 S.Ct. at 621. The Court thus rejected the state's non-exhaustion argument since "the supplemental evidence presented by respondent did not fundamentally alter the legal claim already considered by the state courts...." Id. at 260, 106 S.Ct. at 622.
 
 
 51
 Landano attempts to argue, analogously, that he presented his Brady argument to the state courts and now in his Rule 60(b) motion has simply provided additional evidence to the federal courts of the extent of the State's suppression of exculpatory evidence. Since the additional evidence does not fundamentally alter his state court claim--rather it supports his repeated contention that Forni was the one who committed the Kearney robbery and murder--Landano urges us to apply Vasquez to this case.
 
 
 52
 However, we believe that Landano's argument is flawed because he simply attempts to assume as a premise what is at issue in this appeal. In Vasquez, the petitioner's claim had already been clearly exhausted in state proceedings. After exhausting his remedies, the petitioner merely provided the federal court with additional evidence supporting his claim. The only question in Vasquez was whether the additional evidence fundamentally altered the exhausted claim. The question that is central to our analysis, and which was never at issue in Vasquez, is quite different: whether the substance of the habeas petitioner's federal claim has been fairly presented to the state courts. When seen in this posture, Vasquez is not relevant to the instant case and does not dictate a different result. As we have established above, Landano has not carried his burden of showing that he has fairly presented the substance of his present Brady claims to the state courts, therefore, the principles involving what quantum of additional evidence can support an exhausted claim without running afoul of Sec. 2254(b) are irrelevant to our analysis.[18]
 
 
 53
 Interestingly, both Landano and the district court seem to have anticipated the conclusion we have now reached and thus have provided, collectively, two alternative grounds for reaching the merits of Landano's claims. Both of these arguments are essentially to the effect that because of the particular circumstances of this case, the exhaustion requirement should be excused. We find neither argument compelling.
 
 
 54
 Landano first urges us to find that the State of New Jersey has constructively waived its non-exhaustion argument because of its systemic, bad faith suppression of exculpatory evidence. Unfortunately, he provides us with no Supreme Court, nor even any lower court, decision that has fashioned such an exception to the exhaustion requirement. We can find no hint in any Supreme Court opinion that such an exception would be recognized or countenanced. In fact, just the opposite has been implied in recent opinions. See, e.g., Duckworth, 454 U.S. at 3, 102 S.Ct. at 19 ("An exception [to the exhaustion requirement] is made only if there is no opportunity to obtain redress in state court or if the corrective process is so clearly deficient as to render futile any effort to obtain relief.") (emphasis added).
 
 
 55
 Furthermore, we believe that such an exception would be inconsistent with the important concern with comity that informs our view of the exhaustion rule. As this Court has noted:
 
 
 56
 Exhaustion is a rule of comity. "Comity," in this context, is that measure of deference and consideration that the federal judiciary must afford to the co-equal judicial systems of the various states. Exhaustion, then, serves an interest not of state prosecutors but of state courts.
 
 
 57
 Trantino, 563 F.2d at 96 (emphasis in the original). Accord Rose, 455 U.S. at 518, 102 S.Ct. at 1203 ("The exhaustion doctrine is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings"); Naranjo v. Ricketts, 696 F.2d 83 (10th Cir.1982). Therefore, an exception "punishing" the prosecutor for misconduct by withholding the exhaustion defense would clearly not serve the interest of comity as we have viewed that concept in the habeas context.[19] Thus, we decline Landano's suggestion to carve out an exception to the exhaustion rule for some constitutional errors, i.e., Brady violations, but not others.[20]
 
 
 58
 Landano also argues that should we find that his Brady claims have not been exhausted, then we should accept the district court's alternative holding that the exhaustion requirement should be excused because of exceptional circumstances of peculiar urgency. See Landano, 126 F.R.D. at 644 n. 6 (citing Rose, 455 U.S. at 515, 102 S.Ct. at 1201); Landano's Brief at 40 n. 9. Landano argues, as did the district court, that the pattern of prosecutorial suppression of material, exculpatory evidence in this case amounted to exceptional circumstances. Id.
 
 
 59
 In Rose, the Supreme Court quoted a passage from an earlier Court decision, Ex parte Hawk, 321 U.S. 114, 64 S.Ct. 448, 88 L.Ed. 572 (1944), to the effect that: "it is a principle controlling all habeas corpus petitions to the federal courts, that those courts will interfere with the administration of justice in the state courts only 'in rare cases where exceptional circumstances of peculiar urgency are shown to exist.' " Hawk, 321 U.S. at 117, 64 S.Ct. at 450 (quoting United States ex rel. Kennedy v. Tyler, 269 U.S. 13, 46 S.Ct. 1, 70 L.Ed. 138 (1925)). As the Court in Rose noted immediately thereafter, the doctrine enunciated in Ex parte Hawk is now codified at 28 U.S.C. Sec. 2254 (1982). This section reads in relevant part:
 
 
 60
 (b) An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.
 
 
 61
 28 U.S.C. Sec. 2254(b) (1982) (emphasis added).[21]
 
 
 62
 In the instant case, the State of New Jersey has advised us that Landano does have an available state remedy under N.J.Sup.Ct.R. 3:20-2. Although the burden rests with him, Landano has not disputed that Rule 3:20-2 provides him with an available remedy. The Rule states, in relevant part, that a "motion for a new trial based on the ground of newly discovered evidence may be made at any time...." We have no choice but to conclude that there is not an "absence of available State corrective process" in this case. Cf. Santana, 685 F.2d at 75 ("At least where a fair reading of the state post-conviction relief statute indicates that a state court might well entertain constitutional claims not raised in prior proceedings, and in the absence of a state court decision clearly foreclosing such a result, we cannot conclude that petitioner has demonstrated compliance with the exhaustion requirement").
 
 
 63
 Moreover, neither the district court not Landano provides us with any "special circumstances" which would render this "process ineffective." Assuming, arguendo, that Landano's present claims have merit, even "clear violations" of constitutional rights do not provide the federal courts with an appropriate reason for excusing the exhaustion requirement. See Duckworth, 454 U.S. at 3, 102 S.Ct. at 19. Even if we were to reach the merits and so conclude, a pattern of prosecutorial suppression of exculpatory evidence, without more, would not render the state court remedy available to Landano ineffective. We cannot assume that state courts will be any less protective of the constitutional rights of criminal defendants than federal courts.[22] See, e.g., Darr, 339 U.S. at 205, 70 S.Ct. at 590 (quoting Ex parte Royall, 117 U.S. at 252, 6 S.Ct. at 740). Nor should we assume that the state courts, after the dismissal of the petition herein, will be anything but expeditious in its consideration of Landano's claims.[23]
 
 III.
 
 64
 For the foregoing reasons we believe that the district court erred in holding that Landano had exhausted his state remedies with respect to the new Brady claims he raises in his Rule 60(b) motion. Moreover, we do not find sufficient reason to excuse the exhaustion requirement in this case. Therefore, we will reverse the judgment of the district court and remand, directing the district court to vacate the order conditionally granting the writ of habeas corpus and dismiss Landano's petition. We also direct the district court to vacate all orders it issued in this matter subsequent to its initial order denying Landano's petition. Landano is free to exhaust his available state remedies with respect to his present Brady claims and thereafter petition the federal courts if necessary. Since the State's files will be returned, we will deny the State's petition for mandamus as moot. And because of our disposition of this case, the State's appeal of the district court's order on the work product and privilege issues is also moot.
 
 
 65
 Each party to bear its own costs.
 
 
 66
 ROSENN, Circuit Judge, dissenting.
 
 
 67
 I cannot agree with the majority's rigid application of the exhaustion doctrine as a ground for denying relief, in the face of the prior lengthy state court proceedings on substantially the same issue presented to the district court. Though the newly discovered evidence, which caused the district court to reverse its position and grant Landano's petition, may be a new development for the petitioner, it is not for the State. It had possession of the information during the entire habeas corpus proceedings in the state courts and during the initial hearing before the United States District Court and failed to fulfill its constitutional duty to divulge the the evidence. Under such circumstances and because the purpose and spirit of the doctrine of exhaustion does not require that the issue in the federal court be framed precisely in the same terms as it was in similar proceedings in the state court, I respectfully dissent.
 
 I.
 
 68
 The district court denied Landano's initial petition for habeas corpus, although deeply troubled by the record before it. Even then the record demonstrated the risks that an innocent person might have been convicted of a "despicable crime," but the court considered itself powerless to grant relief in light of prior precedent. Landano v. Rafferty, 670 F.Supp. 570, 580-84 (D.N.J.1988), aff'd, 856 F.2d 569 (3d Cir.1988), cert. denied, --- U.S. ----, 109 S.Ct. 1127, 103 L.Ed.2d 189 (1989). That precedent required it to accept as binding the credibility finding of the state court in its post-conviction proceedings concerning Portas's recantation. Furthermore, even though it initially found evidence that had been suppressed "relevant to the impeachment of Roller and Roth," it concluded that the suppressed evidence was not material in light of Pascuiti's trial testimony linking the killer to the driver of the getaway car and Portas's identification of Landano as that driver. Id. at 584-88.
 
 
 69
 The newly found evidence, however, cast a different light upon the district court's initial conclusion. Evaluating the new information presented, the same district court found that:
 
 
 70
 [E]vidence which may have exculpated the petitioner and inculpated another had been systematically withheld from the petitioner and his counsel. That information coupled with the matters set forth in the court's previous opinion, affords to the court the opportunity to render the justice to the petitioner which was previously denied.
 
 
 71
 Landano v. Rafferty, 126 F.R.D. 627, 630 (D.N.J.1989). Accordingly, the district court granted habeas corpus relief.
 
 
 72
 Throughout this litigation's lifetime, the petitioner had languished in prison for an excess of thirteen years. Only his passionate persistence in seeking to prove that he was framed, and not the cop killer a troubled jury found him to be after deliberating more than a day and a half and receiving an Allen charge, allowed him to uncover the new evidence. Although the majority, like the district court, finds "Landano's new allegations deeply troubling," it rejects the district court's decision to grant a conditional writ of habeas corpus on the ground that Landano has not exhausted his state remedies as to the new evidence presented.
 
 
 73
 The majority appropriately recognizes, however, that the exhaustion doctrine is not a jurisdictional requirement but a juridical development to accommodate federalism and the sovereignty of the state. It seeks to promote comity and serves to "minimize friction between our federal and state systems of justice by allowing the State an initial opportunity to pass upon and correct alleged violations of prisoners' federal rights." Duckworth v. Serrano, 454 U.S. 1, 3, 102 S.Ct. 18, 19, 70 L.Ed.2d 1 (1981).
 
 A.
 
 74
 The goal in applying the exhaustion doctrine, as developed by the judiciary, see Ex parte Hawke, 321 U.S. 114, 64 S.Ct. 448, 88 L.Ed. 572 (1944), and later codified, 28 U.S.C. Sec. 2254, is to balance a civilized society's respect for personal liberty and justice against the principles of comity. The exhaustion doctrine, however, was never intended to be used "as a blunderbuss to shatter the attempt at litigation of constitutional claims without regard to the purposes that underlie the doctrine and that called it into existence." Braden v. 30th Judicial Circuit Court, 410 U.S. 484, 490, 93 S.Ct. 1123, 1127, 35 L.Ed.2d 443 (1973).
 
 
 75
 A claim for habeas corpus relief once heard by a state court is considered exhausted unless it "is so clearly distinct from the claims [the petitioner] has already presented to the state courts that it may fairly be said that the state courts have had no opportunity to pass on the claim." Humphrey v. Cady, 405 U.S. 504, 517 n. 18, 92 S.Ct. 1048, 1056, 31 L.Ed.2d 394 (1972). This requires that the federal habeas corpus claim be the substantial equivalent, not book and verse, of the earlier state court claim. Picard v. Connor, 404 U.S. 270, 278, 92 S.Ct. 509, 513, 30 L.Ed.2d 438 (1971). This similarity should extend to both the facts and the legal theories which form the basis of the petition. Gibson v. Scheidemantel, 805 F.2d 135, 138 (3d Cir.1986). Merely presenting additional evidence to the federal court does not make the claim unexhausted. The Supreme Court has unequivocally stated: "We have never held that presentation of additional facts to the district court, pursuant to that court's directions, evades the exhaustion requirement when the prisoner has presented the substance of his claims to the state courts." Vasquez v. Hillery, 474 U.S. 254, 257, 106 S.Ct. 617, 620, 88 L.Ed.2d 598 (1986).
 
 
 76
 The exhaustion doctrine should not be applied rigidly in a vacuum; its application should reflect the factual complexities of each case, with emphasis on speed, judicial economy, and manifest justice. See Hensley v. Municipal Court, 411 U.S. 345, 350, 93 S.Ct. 1571, 1574, 36 L.Ed.2d 294 (1973). As one commentator has written:
 
 
 77
 To be effective, the exhaustion doctrine must be flexible. It must present the federal courts with general guidance, but permit them to appraise the circumstances in each case with sensitivity to competing interests. The doctrine is, or ought to be, a fact-oriented rule of prudence and discretion, applied on a case-by-case basis to orchestrate the exercise of federal jurisdiction in an effective manner without disrupting or displacing the work of the state court.
 
 
 78
 Yackle, The Exhaustion Doctrine in Federal Habeas Corpus: An Argument for a Return to First Principles, 44 Ohio St.L.J. 393, 394 (1983).
 
 
 79
 In the interests of comity, a ritualistic formalism should not be exalted over a prudential application of substantial equivalence. After all, the doctrine is based on the interests of comity between sovereign powers, not the erection of a stone wall to bar justice in the face of substantial and good faith compliance. A petitioner should not be required, as the Court of Appeals for the First Circuit has held, to adhere "inflexibly to the legal theories and factual allegations recited to the state courts." Williams v. Holbrook, 691 F.2d 3, 6 (1st Cir.1982).
 
 
 80
 It is also crucial to realize that exhaustion requires merely that the state courts be given a fair opportunity to address the federal claim. As this court has stated, the principle does not require that the state courts have considered the claim precisely as made in the federal habeas court. Gonce v. Redman, 780 F.2d 333, 336 (3d Cir.1985). Nor does it require that the state be given more than one such opportunity. Keller v. Pestock, 853 F.2d 1122, 1130 (3d Cir.1988).
 
 
 81
 In his motion to reopen the habeas corpus proceedings in the district court, Landano claimed that the state had violated his constitutional right to the disclosure of exculpatory evidence by failing to turn over certain material items to him that were in its possession and control which would have supported his claim that he had been misidentified. He therefore argued that his due process rights had been violated. In its prior opinion, the district court had concluded that a state agent involved in the prosecution of Landano had made an impermissibly suggestive statement to Portas prior to his courtroom testimony; that the prosecution had suppressed information about co-defendant Roller's additional activities as well as information concerning a police investigation of Roth's business dealings. 670 F.Supp. 577-88. In the words of the district court it had already determined that "the prosecution either committed affirmative acts of misconduct or breached its Brady obligation with respect to three of the State's four key witnesses against Landano." 126 F.R.D. at 646.
 
 
 82
 In petitioner's motion to reopen, the district court now found that the prosecution did not turn over an additional police report which could have further impeached Roth, or a Hudson County prosecutor envelope which memorializes an apparent eyewitness identification of Forni as the getaway driver. The court further found that the prosecution did not turn over the two pieces of evidence directly at issue here. The court stated:
 
 
 83
 There is no question that the record in this matter exposes a pattern of failures by the prosecution in this case to live up to its good faith duty to turn over exculpatory information. This pattern supports the position asserted by Landano from the outset that the prosecution suppressed evidence exculpatory to him and inculpatory of Forni.
 
 
 84
 Id.
 
 B.
 
 85
 The new evidence which Landano now presents is consistent with the evidence he presented in his post-conviction proceeding in the state courts. The new evidence implicates the verdict in the same way the evidence that had been presented to the state courts did, most significantly the evidence that Forni reputedly organized armed robberies and committed similar crimes in the past with Roller, and that Portas originally had picked someone other than Landano, possibly Forni, out of the photographic array. It points to Forni, and not Landano, as Officer Snow's killer.
 
 
 86
 The evidence introduced in the state proceedings regarding Roller implicates Forni, by demonstrating a pattern of criminal activity involving Roller and Forni, a pattern into which the robbery leading to the shooting of Officer Snow fits very nicely. The evidence regarding Portas' identification proved that Landano did not shoot Officer Snow because he was not the driver of the getaway car (whose driver shot Snow), and possibly, if Forni's photo was identified, that Forni was the killer. It also seriously questions the reliability of the witness identifications of Landano. These are exactly the same implications which are drawn from the new evidence. To the extent that the State was able to review the evidence and reach a decision concerning this evidence, it should be found that this gave the State its requisite fair opportunity to assess Landano's Brady claim in its totality.
 
 
 87
 Additionally, Landano requested and was denied, at the state level, further and more complete discovery into withheld evidence. 126 F.R.D. at 641. If this discovery had been granted, the additional evidence in support of misidentification which Landano now presents quite likely would have been discovered, and thus would have been before the state court. This request, in combination with the other proven instances of withheld evidence, gave the State a fair opportunity to correct the constitutional wrong it had perpetrated against Landano.
 
 
 88
 Furthermore, Landano specifically argued, prior to discovering the evidence which forms the basis of his new application, that there was most likely more evidence, possibly relating to Pascuiti's identification, which had been withheld. Landano's counsel argued during the hearing on his original petition to the district court:
 
 
 89
 Important not only for Portas' testimony, but again, the record shows that S-2 [a photographic display which contained pictures of Landano and Forni] was shown to Jacob Roth. The record is unclear, but I think there is an inference that S-2 was also shown to Jonathan Roth, your Honor, an interesting issue for me that is unresolved is what about Joseph Pascuiti. Joseph Pascuiti is the only witness who saw the killing. He saw a man with closely cropped curly hair, no mustache. That is a description that matches a little of Forni.
 
 
 90
 Counsel was able to make this argument without the benefit of the newly discovered evidence concerning Pascuiti and Basapas. Counsel's ability to make this argument, and I suppose, though it is not in the record, that a similar argument was made in the state court, demonstrates that the same "method of analysis" applied by the district court following the introduction of the new evidence was available to the state courts. This was true even without the direct evidence now presented, thus giving the state judicial system the fair opportunity required to constitute exhaustion of state remedies. See Ross v. Pestock, 868 F.2d 639, 641 (3d Cir.1989).
 
 
 91
 Similarly, Landano's contentions in the state courts regarding the destruction and withholding of evidence relating to witness identifications of Forni, in combination with his denied requests for additional discovery, allowed the state court a fair opportunity to examine Landano's claim as now presented. As the trial court appropriately noted in its opinion, "this is not a case in which the state court had no indication that the prosecutor had violated Landano's due process rights by suppressing exculpatory evidence." 126 F.R.D. at 643.
 
 
 92
 Thus, this is not a case "in which the prisoner has attempted to expedite federal review by deliberately withholding essential facts from the state courts." Vasquez, 474 U.S. at 260, 106 S.Ct. at 622. On the contrary, whatever facts were withheld here were by the police and the prosecution. What the district court had before it on the motion to reopen was supplemental evidence, newly discovered in the possession or control of the prosecution, after an intense and desperate search by the prisoner. Thus, I would conclude that this supplemental evidence "did not fundamentally alter the legal claim already considered by the state courts and, therefore, did not require that [petitioner] be remitted to state court for consideration of that evidence." Id. at 260, 106 S.Ct. at 622.
 
 
 93
 The crux of the majority's opinion is that the new evidence, the negative identification of Landano and the Basapas/Pasapas identification of Forni, made Landano's Brady claim, see Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), substantially different from the claims he had made in the numerous state court proceedings. This analysis is based largely upon the majority's conclusion that Landano's claims, and Brady claims in general, are similar to other types of claims, generally ineffective assistance of counsel claims, in which a near identity of factual allegations is required for a claim to be considered exhausted. I do not find the analysis adopted in those cases equally applicable to this or many other Brady type claims.
 
 
 94
 One key distinction between the ineffective assistance of counsel cases cited by the prosecution and Brady claims, in terms of exhaustion, is the burden placed upon the petitioner by requiring factual identity. In a typical ineffective assistance of counsel claim, the petitioner should know all of the facts which form the basis of his claim immediately following his trial. From the time he hires new counsel and relates the facts of his case to that counsel, he has the ability to bring a claim, presumably in state court, for relief based upon all of the alleged improprieties. Thus, the burden of presenting all of his claims initially and at one time is very low in ineffective assistance of counsel cases.
 
 
 95
 For a Brady claimant, however, the burden of presenting all of his claims once and forever is much higher. The petitioner in this type of case does not know he has a claim until he discovers the evidence which was withheld. This could come at any stage of the proceedings. Thus, there is a practical barrier to this type of claimant bringing all of his claims, based upon all of his factual allegations, at the same time. This barrier is made even higher if petitioner is forced to go through the entire state and federal court hierarchy each time he finds a new piece of evidence to support his contention.
 
 
 96
 It must also be remembered that at all times during this procedure, the petitioner has been in prison. Not only was his freedom restricted, but also his ability to pursue evidence of his innocence. It is a testament to Landano's claim of mistaken identity and innocence that he was able to discover this crucial evidence so long after his trial.[1]
 
 
 97
 A second distinction between a Brady type claim and a claim for ineffective assistance of counsel is the complexity and range of possibilities the claims present. As the majority notes, there is almost a limitless number of possible errors involving ineffective assistance of counsel, e.g., conflict of interest, poor advice regarding a plea, poor advice regarding whether or not to testify, inadequate preparation time. All of these involve an extensive review of the facts associated with the alleged incident, and the effect this had upon the trial and subsequent guilty verdict. All concern different types of actions by counsel or the court. See e.g., Domainque v. Butterworth, 641 F.2d 8, 13 (1st Cir.1981).
 
 
 98
 Brady claims, on the other hand, involve only one type of misconduct, a failure to deliver exculpatory evidence to the defendant. Once a state court determines that certain evidence has been withheld in violation of Brady, as the Superior Court of New Jersey did in its denial of Landano's 1978 motion for a new trial, it is a very small step to conclude, when presented with additional evidence, that other materials were also withheld. The state court has already made a determination that the prosecution violated defendant's right to have that evidence at trial. Thus, a standard of factual equivalence similar to the one used in sixth amendment exhaustion determinations is neither required nor necessary in a Brady exhaustion analysis such as is involved in this case.
 
 
 99
 Likewise, the result of the violation is more easily assessed, and is more critical, in the Brady context, than in the ineffective assistance of counsel context. Brady claims, such as those made by Landano, undermine the jury's ultimate determination of guilt or innocence. The evidence of the negative identification of Landano by Pascuiti and the positive identification of Forni by the mysterious Mr. Basapas demonstrates that at least two witnesses thought, or possibly knew, that Landano did not fire the gun which murdered Officer Snow. To assess this implication takes little analysis or thought. Ineffective assistance of counsel claims involve many more assumptions and conjectures. Sixth amendment claims also do not necessarily undermine the reliability of a jury verdict, but more squarely implicate the process by which that verdict was reached. Thus, the right to effective assistance of counsel cases relied upon by the majority are inapposite to the Brady claims we now have before us.
 
 
 100
 Furthermore, violations which so greatly undermine the reliability of a verdict imposing a lifetime confinement deserve more careful and immediate attention than other types of violations. These cases are not only of great concern to the prisoner involved, but to the State and to prison officials and staff. A state's interests are best served by undoing a probable wrong in the quickest possible manner.[2] Given the prudential policy of comity which underlies the exhaustion doctrine, such a high degree of factual identity between state and federal court claims should not be required in the most important cases. Here, and in cases like the instant case, the interests of justice provide a powerful incentive to weight the concerns of comity in favor of the prisoner's liberty interests. This is precisely what the district court did.
 
 C.
 
 101
 Given the extraordinary facts in this Brady claim, the majority erects an unrealistic barrier which serves no useful purpose except to burn up valuable judicial time and expenses in both the state and federal judicial systems. Petitioner has made legitimate efforts to gain relief in the state forum. Professor Yackle's interpretation of the exhaustion principle is most appropriate in this context:
 
 
 102
 If prisoners make some effort at exhaustion and present at least some arguable case for compliance, and if it appears that the state courts have concluded that no relief is warranted, then surely it is reasonable to consider the perceived merit of the claim before bucking the case back to the state forum in knee-jerk fashion. In cases in which the federal habeas corpus court anticipates that relief will be awarded when the merits are reached, it seems unduly harsh to condemn prisoners to further unconstitutional confinement if, and this is important, a legitimate argument can be made that the exhaustion doctrine has been satisfied.
 
 
 103
 Yackle, The Exhaustion Doctrine, supra at 421.
 
 
 104
 Forcing a Brady claimant back to state court each time he finds new evidence that the State has withheld is in effect like allowing the State to remove a man's eyeglasses and then penalizing him for his impaired vision. As the Court of Appeals for the Eighth Circuit held in a case most similar to Landano's, "A due respect for comity does not require that federal proceedings be halted each time the state produces additional evidence potentially favorable to the petitioner." Austin v. Swenson, 522 F.2d 168, 170 n. 5 (8th Cir.1975). See also United States ex rel. Merritt v. Hicks, 492 F.Supp. 99 (D.N.J.1980) (following Austin v. Swenson ).
 
 
 105
 Sending Landano back to state court would not advance the twin goals of respect for state sovereignty and educating state courts regarding federal constitutional rights. It will encourage state law enforcement officials to disregard the valuable rights protected by the Brady doctrine. It would remove from the State "any incentive to make timely disclosure of material, exculpatory evidence and trivializes the constitutional right recognized in Brady and its progeny." Monroe v. Blackburn, 476 U.S. 1145, 1150, 106 S.Ct. 2261, 2265, 90 L.Ed.2d 706 (1986) (Marshall, J., dissenting from denial of certiorari).
 
 
 106
 It is not an undue burden to force a state prisoner to go to state court upon finding the first piece or set of withheld evidence. It is an unfair burden, though, to force that person back to state court, after he has already petitioned for federal habeas corpus, each and every time he finds another piece of evidence. This is particularly true, when his case has been through the state court system twice and he has been imprisoned for thirteen to fourteen years. Thus, I would join the Court of Appeals for the Eighth Circuit in formulating a rule, which would hold Brady claims based upon new evidence exhausted as long as the petitioner had previously made a Brady claim in the state court based upon evidence of similar importance and effect.[3] As that court of appeals held, "Absent a willful withholding of evidence by the defendant in the state proceeding, the requirement of exhaustion does not preclude the District Court from entertaining the issue previously raised in state court and deciding the habeas claim upon the basis of new evidence." Austin v. Swenson, 522 F.2d at 170.
 
 
 107
 Under this standard, the district court here properly entertained Landano's petition. Landano spent nearly eight years litigating his case in the New Jersey court system. All along he claimed he was framed, and that Forni was actually the killer. Each step of the way he uncovered more and more evidence which had been suppressed by the State, the prosecution, or the police. Each time he found new evidence, inculpating Forni and exculpating himself, he presented it to the state court. The state courts, though finding that evidence had been withheld, denied relief.
 
 
 108
 Finally, he petitioned the federal district court for relief. Forced by the weight of the state court's findings, that court initially denied him relief, despite its determination that the guilty verdict against Landano was not well grounded. 670 F.Supp. at 583-84. The court believed its result to be so harsh and unjust, yet required by its interpretation of the controlling law, that it virtually implored the appellate court to reverse. Id. at 572. After his original petition ran its course, Landano discovered new evidence, the Basapas identification. He petitioned the district court to reopen the case. Only after the district court granted him complete and open discovery did he uncover the negative identification of Landano. Upon this record and after all these years and expense, it would be harsh to require Landano to once more begin the expensive, lengthy, and weary course in the state judicial system to vindicate himself. His persistent efforts to clear himself have already encountered many high hurdles.
 
 II.
 
 109
 Because I would hold that Landano had exhausted his state remedies as statutorily required, I must, of necessity, reach the other substantive issues raised by the State. I will briefly analyze each of these issues below.
 
 
 110
 The next procedural issue which the State raises is that it was improper for the district court to reopen the case under Federal Rule of Civil Procedure 60(b). Rule 60(b) provides that:
 
 
 111
 On motion and upon such terms as are just, the court may relieve a party ... from a final judgment ... for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; ... (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken.
 
 
 112
 Fed.R.Civ.P. 60(b). The State claims that the district court should not have reopened its initial habeas corpus decision, because the new allegations, which are merely newly discovered evidence (60(b)(2)) and attorney misconduct (60(b)(3)), were not made within one year of the original judgment, as required by the rule. The district court recognized this problem, and granted Landano's motion to reopen upon the residuary clause, Fed.R.Civ.P. 60(b)(6), which is not subject to the one year limitation.
 
 
 113
 The Rule 60(b)(6) savings clause should be used only in extraordinary circumstances. Moolenaar v. Gov't of the Virgin Islands, 822 F.2d 1342, 1346 (3d Cir.1987). Generally, this requires that the petitioners make "a more compelling showing of inequity or hardship" than normally would be required to reopen a case under subsections (1) through (5). Twelve John Does v. District of Columbia, 841 F.2d 1133, 1140 (D.C.Cir.1988); see Stradley v. Cortez, 518 F.2d 488, 493 (3d Cir.1975). If such a hardship is ever present, it would seem that it is present in this case.
 
 
 114
 The allegations which Landano makes are not in the context of a civil case, as are most motions under Rule 60(b), but instead in a case where a man has been imprisoned for many years for a crime he might not have committed. The new evidence is not evidence which would merely change the district court's judgment, but evidence which goes to prove the innocence of a convicted man. The prosecutorial misconduct is not merely a breach of discovery, but it is a constitutional violation. To this extent I agree with the district court which held:
 
 
 115
 The court cannot conceive of circumstances more "extraordinary" than those presented here, where a prisoner presents evidence that he was convicted without the benefit of exculpatory evidence and that such evidence was not available to him until the time of his motion for relief under Rule 60(b) because of the failure of the State to meet its obligation to turn over such evidence. Landano should not be deprived of the opportunity to present evidence of the suppression of exculpatory materials simply because the State successfully suppressed such evidence until after his habeas corpus application was heard and decided by this court.
 
 
 116
 126 F.R.D. at 638.
 
 III.
 
 117
 Continuing on a procedural tack, the State contends that the district court committed reversible error by failing to hold an evidentiary hearing prior to making its determination. See Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963). The State asserts that because the facts relevant to the two newly discovered documents were in dispute, and no court had ever made a determination of the nature of the documents and whether they were actually suppressed, a hearing was not only legally but logically necessary. New Jersey would urge us, assuming that we reach this question, to remand to the district court for an evidentiary hearing.
 
 
 118
 Townsend holds that "[w]here the facts are in dispute, the federal court in habeas corpus must hold an evidentiary hearing if the habeas applicant did not receive a full and fair evidentiary hearing in a state court, either at the time of trial or in a collateral proceeding." Id. at 312, 83 S.Ct. at 757. The right to a fair and full hearing of facts is a due process right of the habeas petitioner and not the state. Though the state certainly has an interest in protecting the judgments rendered by its criminal courts, this interest is not as high as a person's constitutional interest in liberty. If the state does not receive a hearing and loses, it merely must retry the case. This is a burden, but not nearly as compelling as the burden to an unsuccessful habeas petitioner, who is returned, virtually without recourse, to prison.
 
 
 119
 In cases where a due process right is not blatantly violated, Townsend leaves it to the discretion of the trial court to determine if an evidentiary hearing is necessary. Id. at 318-19, 83 S.Ct. at 759-60. Also, there is no requirement of a hearing if such a hearing would be frivolous. Id. at 317, 83 S.Ct. at 759. In this case, the district court implicitly ruled that an evidentiary hearing would be largely frivolous, because the State failed to make any documented allegations to contradict the claims made by Landano. This, to me, displayed a proper exercise of discretion. Furthermore, the State never specifically requested a hearing of the district court, nor did it protest to the court because of the failure to hold such hearing.
 
 
 120
 Landano presented certifications from himself and appellate counsel that the State had never disclosed the documents in question. Landano himself is the only person who has been continuously involved in the case from beginning to end, and asserts that he is familiar with all of the evidence in the case. Appellate counsel reports that he did an extensive search of his files, Landano's files, and trial counsel's files and did not find the documents. Landano's trial counsel died sometime after trial, and thus is unable to confirm or deny the allegations made by Landano and appellate counsel.
 
 
 121
 The State's response was minimal. No member of the original prosecution team, nor of the police, could recall the two documents and thus were unable to recall if the documents were ever forwarded to Landano. Given this general lack of memory on the part of the State's potential witnesses, and the large amount of time which has passed, in all likelihood an evidentiary hearing conducted by the district court, or by a state court would have been unproductive. I therefore would hold that the trial court did not abuse its discretion by failing to hold an evidentiary hearing.
 
 IV.
 
 122
 The State also appeals on substantive grounds, arguing that Landano is not due relief under Brady. It asserts that the evidence was not suppressed, and that even assuming that it was, the evidence is not immaterial. With respect to the negative I.D. of Landano, the State contends that Pascuiti testified at trial that he thought the gunman had curly hair, and he even admitted on cross-examination that he picked Forni as resembling the gunman. It similarly argues that Basapas is really Pascuiti, and thus again, the jury was aware that Pascuiti had tentatively identified Forni as the gunman. These are questions of fact, and we review them only to determine that they are not clearly erroneous.
 
 A.
 
 123
 In Brady, the Supreme Court held that a defendant's due process right to a fair trial is violated when the prosecution, actually or constructively, withholds material, exculpatory evidence. 373 U.S. at 83, 83 S.Ct. at 1194. The prosecution is responsible for knowing what evidence appears in its files, regardless of whether or not it has actual knowledge of the evidence. United States v. Agurs, 427 U.S. 97-110, 96 S.Ct. 2392-2401, 49 L.Ed.2d 342 (1976). It is irrebutably presumed that the prosecution's file is coextensive with the police files. See Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972); Smith v. State of Florida, 410 F.2d 1349, 1351 (5th Cir.1969).
 
 
 124
 The two pieces of evidence in this case, the police report reference to Basapas, and the negative I.D. of Landano were part of the police department file and were exculpatory. Thus, the State had an obligation to disclose them to Landano. The district court ruled that they were suppressed, and this finding is not clearly erroneous.
 
 
 125
 Landano and appellate counsel certify that these two documents were not disclosed. The State is unable to rebut this persuasively. It fails to present any direct evidence substantiating its claim. Essentially, its only argument is that Landano's trial counsel must have had access to the evidence, because he questioned Pascuiti at trial concerning a photo identification of Forni.
 
 
 126
 This allegation is rebutted, though, by Landano's own description of trial counsel's strategy. Landano certified that "At trial, Mr. Flynn [trial counsel] decided, as he put it, to go on a 'fishing expedition' or to 'fish out' whether or not various witnesses ever identified Victor Forni. Mr. Flynn did this with Jonathan Roth, Ann Marie DeMichelli and Joseph Pascuiti to name some witnesses Mr. Flynn tried this approach on." Given this certification, and that Flynn has died and thus is unable to definitively answer the question, it cannot be said that it was clearly erroneous for the district court to rule that the evidence had been suppressed.
 
 B.
 
 127
 It is not enough merely that exculpatory evidence be suppressed; it must also be material in order for the evidence to serve as grounds for upsetting the jury verdict. Materiality requires that there be a reasonable probability that if the evidence had been disclosed the result of the proceedings would have been different. See United States v. Bagley, 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985). In judging the materiality of evidence, the court must consider the totality of the evidence and determine the relative "strength or fragility of the state's case against [the defendant] as a whole." Carter v. Rafferty, 26 F.2d 1299, 1308 (3d Cir.1987), cert. denied, 484 U.S. 1011, 108 S.Ct. 711, 98 L.Ed.2d 661 (1988).
 
 
 128
 In this case, following the first habeas hearing, and even before that, the State's case against Landano was extremely thin. Initially, the jury that ultimately convicted Landano, was nearly hung, and was only able to reach a verdict after almost two days of deliberation and a "forceful" though not unduly coercive, Allen charge, see Allen v. United States, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1986). 670 F.Supp. at 589-90. Before reaching this verdict, the jury also requested and had reread to it the testimony of Pascuiti. Thus, it is clear that the jury considered this testimony highly significant.
 
 
 129
 Second, the case was factually very weak, based almost exclusively upon equivocal eyewitness identifications. The only physical evidence implicating Landano, hair samples and a somewhat distinctive hat, is not persuasive unless tied to conclusive identifications. The only participant identification, Roller's, is suspect because he had in interest in protecting Forni and in aiding the police as a part of his plea agreement. Id. at 584-86. Pure witness identification cases are inherently weak. As one commentator explains, "Many judges have concluded that at best most eyewitnesses can retain the memory of the obvious two eyes, one nose and one mouth. There is always cause for concern when guilt or innocence turns solely on identification testimony and nothing else connects the defendant with the crime." N. Sobel, Eyewitness Identification, Legal and Practical Problems (1972).
 
 
 130
 The case has been made weaker and weaker by the subsequent proceedings. Portas, the only witness to definitively identify Landano, has attempted to recant his trial testimony, and has reported that he initially identified someone other than Landano as the driver of the getaway car. Landano v. Rafferty, 670 F.Supp. at 576-78. Roth, the victim, who related a version of the incident which was completely different from any other version, identified Landano, but it was subsequently discovered that he might have done so to prevent a police investigation of his own illegal operations. Id. at 586-88. The state court also heard testimony from two of Roller's prison cell mates, which it found not to be credible, which supports Landano's claim that Roller framed him. All of this evidence, though, was not enough because of the initial strength of Pascuiti's testimony combined with Portas'.[4] The newly discovered evidence, however, demonstrates that the State's case, erected upon a house of cards, has little, if any, credible foundation to it.
 
 
 131
 The Basapas identification is significant regardless of who is or was Basapas. If Basapas was Pascuiti, a proposition which given the difference in spelling seems to stretch the bounds of logic somewhere past its breakingpoint, it shows that Pascuiti identified Forni as the killer. Though Landano's trial counsel managed to elicit some admission of this from Pascuiti, it was effectively rebutted by the prosecution, which pointed out that Pascuiti had not been able to positively identify anyone. Had the new evidence been available to defense trial counsel, he could have made this point more forcefully and pressed Pascuiti on the identification of Forni. Given the care with which the jury considered Pascuiti's testimony, its request that his testimony be read to them, and the trouble they had in reaching a verdict, a stronger statement by Pascuiti concerning his earlier identification of Forni would have had a reasonable probability of changing the outcome.
 
 
 132
 If Basapas is not Pascuiti, the jury would have been presented with a direct witness identification of Forni, and not Landano. This would have rebutted the Portas identification, particularly given that Portas was unable to identify Roller as the passenger of the getaway car. If this supplemental evidence had been introduced at trial, it is more than probable, and likely, that the jury would have returned a not guilty verdict.
 
 
 133
 The negative I.D. of Landano is also material because it proves that the only man who saw the actual murder, Pascuiti, did not think that Landano was the killer. This is a much stronger statement than Pascuiti's testimony that the gunman had curly hair, as opposed to Landano who has straight hair. Again, the care with which the jury considered Pascuiti's testimony, and the difficulty they had in reaching a verdict, indicates that the added degree of strength which a negative identification by Pascuiti would have added to Landano's case creates a reasonable probability that Landano would have been found not guilty.
 
 
 134
 Though both pieces of evidence, in combination with past determinations, would be independent grounds for granting the petition, they are even stronger when viewed together. The evidence disclosed up until this time has been amazingly consistent in supporting Landano's claim that he was wrongly convicted. It tends to substantiate Landano's original claim that evidence of identifications which would have detracted from the State's case against Landano was destroyed or withheld. Also, it supports the argument that Forni, and not Landano, was the killer. Accordingly, I would affirm in all respects the district court's grant of the conditional writ of habeas corpus.
 
 V.
 
 135
 The State has filed a petition for mandamus to compel the return of the files in which it claims a work product privilege. It also has a pending motion for the return of the files. The mandamus proceedings have been consolidated with the State's appeal from the district court's judgment in the habeas corpus petition and briefed and argued together. We now turn to the mandamus petition.
 
 
 136
 I, like the majority, would return all of the files at this time but for a different reason. I would hold that there is no longer an urgent need to protect the files and that the temporary restraining order should be dissolved. This would make the mandamus petition moot.
 
 
 137
 The continuation of a temporary restraining order beyond the period of statutory authorization is generally considered to be the equivalent of the issuance of a preliminary injunction. Sampson v. Murray, 415 U.S. 61, 86, 94 S.Ct. 937, 951, 39 L.Ed.2d 166 (1974). To justify such extraordinary relief a party must show that (1) s/he will most likely prevail on the merits appeal, (2) s/he will suffer irreparable harm if the relief is denied, (3) other parties will not be substantially harmed by the relief, and (4) the public interest will be served. See In re Arthur Treacher's Franchisee Litigation, 689 F.2d 1137, 1143 (3d Cir.1982). The point of reference for conducting this analysis is the period after the district court entered its order denying the release of the files, for it is here that the injunction was extended indefinitely until this court entered its judgment.
 
 
 138
 In this case, Landano has not demonstrated irreparable harm, and thus the restraining order should be dissolved. Landano has already had an opportunity to view all of the State's records, with the exception of those in which it claims and was granted a work product privilege. To this extent, he has been privy to all of the information in those files, and has had an opportunity to discover any additional exculpatory evidence. Though Landano claims that the files should be sequestered to prevent any further destruction, such destruction would not cause him any harm at a retrial. He has already seen all of the evidence and can make use of it. He will also be given full and adequate discovery pursuant to any retrial. If the State attempts to hide anything from him in this discovery, he will be on notice of any impropriety, and will be able to adequately protect his interests at that time. Thus, the return of the files will not cause Landano irreparable harm.
 
 
 139
 Additionally, the public interest, and the prosecution's interest will be adversely affected by the continuation of the sequestration of the files. The State would need the files to reevaluate its case and determine if Landano should be retried. The State's ability to retry Landano would be severely limited if its files were not returned, particularly in light of the ninety day period in which the district court ordered it to commence any proceedings against Landano. Delaying the return of the files injures the public's interest in the efficient and accurate operation of the criminal justice system. The public's interest was protected by the initial entry of the restraining order, because this allowed Landano the opportunity to prove that his trial had been unfair, and had reached an incorrect result. Now, though, assuming the district court were affirmed, that interest shifts to locating and trying Officer Snow's murderer, whether it be Landano, Forni, or someone else. Returning the State's files will facilitate this process; continuing the restraining order will frustrate it.
 
 VI.
 
 140
 In conclusion, under the facts established here there is a grave threat to the fundamental right to personal liberty of an innocent man unless the conditional grant of the writ of habeas corpus is allowed. Applying the strictures of the exhaustion requirement and requiring repetitive, costly and time-consuming procedures in the state judicial system on substantially the same issue heard by the district court does not serve the cause of comity. To adhere so strictly to a prudential consideration of comity in the face of such manifest injustice detracts from the judiciary's role as the guarantors of justice and the Great Writ's ability to stand as the bulwark of personal liberties. I cannot join in such a result.
 
 
 141
 The judgment of the district court in granting the conditional writ of habeas corpus should be affirmed. The State's motion for the return of the files should be granted and the petition for writ of mandamus denied as moot.
 
 
 
 [1]
 This account of the underlying crime and the subsequent trial proceedings is summarized from prior opinions of this Court and the United States District Court for the District of New Jersey. See Landano v. Rafferty, 670 F.Supp. 570, 573-75 (D.N.J.1987), aff'd, 856 F.2d 569, 570-71 (3d Cir.1988), cert. denied, --- U.S. ----, 109 S.Ct. 1127, 103 L.Ed.2d 189 (1989)
 
 
 [2]
 Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). For simplicity, throughout this Opinion we use the generic term "Brady claim" to refer to Landano's various claims involving State suppression of exculpatory evidence including claims of suppression of impeachment evidence under Giglio v. United States, 405 U.S. 150, 154, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972)
 
 
 [3]
 Allen v. United States, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896)
 
 
 [4]
 Issue (5) was based on alleged prosecutorial misconduct in coercing the testimony of Roth, destroying relevant photographs, and parading a handcuffed Landano in front of Portas immediately prior to his trial testimony and in-court identification
 
 
 [5]
 The district court also found that the state trial court's Allen charge did not violate Landano's sixth amendment or due process rights
 
 
 [6]
 Although finding no fraud on the prosecutor's part, the district court reopened the case because of exceptional circumstances under subsection (6) of Rule 60(b). In resolving the merits of Landano's Brady claims, the district court did not hold evidentiary hearings
 
 
 [7]
 Landano also raised other claims in the district court in connection with his 60(b) motion, however, none are at issue in this appeal. The district court found that "none [of these additional claims] serve[s] as an independent basis for this court to void Landano's conviction on constitutional grounds." Landano v. Rafferty, 126 F.R.D. 627, 654 n. 13 (D.N.J.1989). Landano has not appealed this holding. Thus, even assuming that these additional claims have been exhausted and that the 60(b) motion was properly granted, our decision that two of Landano's Brady claims are unexhausted does not require us to remand this case to the district court and permit Landano to waive the non-exhausted claims. Cf. Dooley v. Petsock, 816 F.2d 885, 888 n. 1 (3d Cir.), cert. denied, 484 U.S. 863, 108 S.Ct. 182, 98 L.Ed.2d 135 (1987)
 
 
 [8]
 It is unclear from the Kearney Police Continuation Report whether the name of the witness is "Joseph Pasapas" or "Joseph Basapas." At any rate, both sides agree that there is no individual by that name who has anything to do with this case, and thus the name must be misspelled. However, the parties disagree on who the actual witness really is
 
 
 [9]
 The district court's order denying the privilege and confidentiality claims had been stayed by this Court pending the disposition of the mandamus petition. On August 29, 1989, this Court also stayed the conditional writ
 
 
 [10]
 Thus, because of our holding on the exhaustion issue we do not reach the question of whether the district court erred in reopening the habeas proceeding under Rule 60(b)(6), although we find that issue problematic as well. Likewise, we do not reach the State's arguments either on the merits of Landano's Brady claims or on whether an evidentiary hearing was required
 
 
 [11]
 To avoid confusion, we will refer to these claims as Landano's "present Brady claims," and the claims described in the succeeding sentence as his "previous Brady claims."
 
 
 [12]
 The clause introducing the section clearly indicates that the allegations Landano is making in the preliminary statement will be factually supported in the argument section to follow
 
 
 [13]
 The Court of Appeals for the First Circuit has summarized what appears to be the prevailing view in the circuits:
 Some claims of constitutional violations--such as ineffective assistance of counsel or unfair trial--encompass an almost limitless range of possible errors. A defendant raising a Sixth Amendment violation who complained in state court about counsel's failure to object to certain testimony should not be deemed to have exhausted his or her remedies if the federal court claim asserts ineffective assistance of counsel based on a conflict of interest. In such a case, the state court's analysis of the alleged constitutional error necessarily would differ substantially from the federal court's consideration of the Sixth Amendment claim. And the defendant's argument would not have alerted the state court to the claim that formed the basis of the habeas corpus petition.
 Lanigan v. Maloney, 853 F.2d 40, 45 (1st Cir.1988), cert. denied, --- U.S. ----, 109 S.Ct. 788, 102 L.Ed.2d 780 (1989) (dicta) (cases cited therein). Accord Burns v. Estelle, 695 F.2d 847, 849-50 (5th Cir.1983) (ineffective assistance of counsel claims); Towndrow v. Henderson, 692 F.2d 262, 265 (2d Cir.1982) (ineffective assistance of counsel claims); Winfrey v. Maggio, 664 F.2d 550, 553 (5th Cir.1981) (ineffective assistance of counsel claims); Turner v. Fair, 617 F.2d 7, 10-12 (1st Cir.1980) (sixth amendment confrontation clause claims); Mayer v. Moeykens, 494 F.2d 855, 858-59 (2d Cir.), cert. denied, 417 U.S. 926, 94 S.Ct. 2633, 41 L.Ed.2d 229 (1974) (fourth amendment claims). We conclude that this description is equally applicable to Brady claims.
 
 
 [14]
 Although Johnson appears to be inconsistent with Gibson, the Johnson court did stress that at the state court hearing on the petitioner's post-conviction claims, the petitioner gave the court notice that his ineffectiveness claim was not based solely on the inadequate investigative aspects of his counsel's work. Johnson, 531 F.2d at 173 n. 8
 
 
 [15]
 The analytical significance of Landano's new factual allegations cannot be gainsaid. The dissent overlooks the fact that based only on the factual allegations raised in the state courts, the district court and this Court agreed that Landano's previous Brady claims were based on information that was indeed suppressed, but not material. If it is true, as the dissent suggests, that the method of analysis used by the district court with respect to Landano's present Brady claims was readily available to the state courts previously, then it follows that not only did the state courts fail to properly employ this analysis, but so did the district court in initially rejecting Landano's habeas corpus petition and so did this Court in affirming the district court. We believe that this must be wrong because clearly it is the new factual allegations raised by Landano, not the recognition of a previous analytical mistake, that have now caused the district court to completely re-evaluate its previous analysis as to the materiality of the prior suppressed material and to incorporate this material into its analysis of the materiality of the present Brady claims. See discussion supra. Obviously, this same analysis was not available to the state courts previously and thus Landano's present Brady claims cannot be held to have been exhausted under Zicarelli, 543 F.2d at 472
 
 
 [16]
 We also note that the State of New Jersey argues that this Continuation Report, along with numerous other Continuation Reports, was given to Landano's trial counsel. The State's argument on this issue, as well as on other issues relating to the merits of Landano's claims, is not insubstantial
 
 
 [17]
 Census figures for 1910 through 1960 had been considered in the state court. Hillery v. Pulley, 533 F.Supp. 1189, 1199 n. 21 (E.D.Cal.1982)
 
 
 [18]
 Likewise, Patterson v. Cuyler, 729 F.2d 925, 929 (3d Cir.1984) and Bright v. Williams, 817 F.2d 1562, 1565 (11th Cir.1987) do not support Landano's position. These cases stand for the proposition that when a petitioner raises the same constitutional question in both state and federal courts and the resolution of that question requires the courts to review the same factual record, the failure of the petitioner to highlight the same facts in state court as he does in federal court does not mean the federal claim is non-exhausted. See also United States ex rel. Kemp v. Pate, 359 F.2d 749, 751 (7th Cir.1966); United States ex rel. Hamilton v. Ellingsworth, 692 F.Supp. 356, 368 (D.Del.1988)
 
 
 [19]
 The exception that Landano urges us to fashion would also frustrate one of the principal goals of the exhaustion requirement, i.e., increasing the likelihood that the factual allegations necessary to a resolution of the federal habeas claim will have been fully developed in state court and thus making federal review more expeditious. With Landano's suggested exception in place, federal courts would often be called upon to hold evidentiary hearings in order to develop the factual underpinnings for specific Brady claims not previously raised in the state courts. Moreover, this exception would force federal courts to adjudicate the merits of a habeas petitioner's Brady claims before deciding whether the petitioner has actually exhausted his state remedies. Both consequences militate against expeditious federal court review of habeas corpus claims
 
 
 [20]
 Landano implicitly invokes an additional argument for why our concern with comity would not be frustrated in this case by our adoption of his exception to the exhaustion requirement. He contends that the state courts have been responsible for his failure to uncover the specific Brady material that is the subject of his Rule 60(b) motion. Landano states that he "vainly sought expansive hearings and discovery that would have led to the discovery of the documentary evidence involved here." Brief for Appellee at 28-29. From the record before us, we believe that this suggestion is unfair to the New Jersey courts. The only requests by Landano we find in the record are for discovery on two specific and discrete issues: the identification of Portas and the coercion of Roth. Landano was provided with some discovery and a hearing in state court as to the former issue. And while the state court denied discovery on the latter issue, even if we were to conclude that such a denial was inappropriate it would be extremely unlikely, or at best highly speculative, that such discovery would have led to the Brady material now at issue. But more importantly, Landano never provided to the state courts the additional information he has provided to the district court in his ex parte application seeking further discovery. We will not assume that the state courts, unlike the district court in this case, would not have granted Landano appropriate discovery had he done so
 
 
 [21]
 Section 2254(b) codifies both the exhaustion doctrine and the "special circumstances" exception to the doctrine:
 Ex parte Hawk prescribes only what should "ordinarily" be the proper procedure; all the cited cases from Ex parte Royall to Hawk recognize that much cannot be foreseen, and that "special circumstances" justify departure from rules designed to regulate the usual case. The exceptions are few but they do exist. Other situations may develop. Congress has now made statutory allowance for exceptions such as these, leaving federal courts free to grant habeas corpus when there exist "circumstances rendering such [state] process ineffective to protect the rights of the prisoner." 28 U.S.C. Sec. 2254....
 Darr v. Burford, 339 U.S. 200, 210, 70 S.Ct. 587, 593, 94 L.Ed. 761 (1950) (footnote and citations omitted) (overruled in other respects by Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963)). See Burkett v. Cunningham, 826 F.2d 1208, 1218 (3d Cir.1987); Mayberry v. Petsock, 821 F.2d 179, 183 (3d Cir.), cert. denied, 484 U.S. 946, 108 S.Ct. 336, 98 L.Ed.2d 362 (1987). Accord Galtieri v. Wainwright, 582 F.2d 348, 354 & nn. 12, 13 (1978) (en banc).
 
 
 [22]
 We cannot agree with the plain implication of the dissent that the federal judiciary has some greater insight into, or sensitivity to, the requirements of justice than that possessed by state courts
 
 
 [23]
 Of course, if there is an inexcusable or inordinate delay by the state in processing his claims for relief, Landano may then seek appropriate relief in federal court. See Burkett, 826 F.2d at 1218. Although we join with the district court in finding Landano's new allegations deeply troubling, any delay that occurs in the consideration of these claims up until the point Landano files an appropriate motion in the state courts will not have been due to the neglect of the New Jersey courts, but rather the misjudgment of Landano's counsel as to the requirements of the exhaustion doctrine
 
 
 [1]
 Landano has displayed remarkable steadfastness given the circumstances. Not only has he vigorously pursued vindication, but he has also made a positive contribution to the prison and society in general. During his years of incarceration in the Rahway State Penitentiary, he was the founder and president of "The Lifers," the group of prisoners sentenced to life imprisonment which ran the nationally recognized juvenile rehabilitation program, "Scared Straight."
 
 
 [2]
 See Remington Changes in the Availability of Habeas Corpus: Its Significance for State Prisoners and State Correctional Programs, 85 Mich.L.Rev. 570, 580-90 (1986). Remington argues that:
 A post conviction process which is responsive to those who have an arguable claim of innocence (not guilty or at least not guilty of as serious an offense as that of which they were convicted) is desirable for several reasons: (1) imprisoning people who ought not be confined for so long is economically wasteful; (2) a correctional program is unfairly burdened if it is asked to treat constructively a person who has an arguable claim of innocence; and (3) a most basic right of an individual is not to be punished for a crime he or she did not commit. It would seem to follow from a state correctional program point of view the greatest opportunity for post conviction review, both state and federal, should be for those who can make an arguably valid showing that the guilt-finding process failed in their case.
 Id. at 582-83.
 
 
 [3]
 The petitioner must have based his state court Brady claim upon more than mere allegations; he must have been able to substantiate it with some evidence. See Wise v. Warden, 839 F.2d 1030 (4th Cir.1988); Sampson v. Love, 782 F.2d 53 (6th Cir.), cert. denied, 479 U.S. 844, 107 S.Ct. 159, 93 L.Ed.2d 98 (1986); United States ex rel. Trantino v. Hatrack, 563 F.2d 86, 94 (3d Cir.1977), cert. denied, 435 U.S. 928, 98 S.Ct. 1499, 55 L.Ed.2d 524 (1978)
 The new evidence should have a similar impact upon the case. For instance it would not constitute exhaustion if petitioner raised a Brady claim based upon the withholding of evidence relevant to the voluntariness of his confession, and later presented a claim based upon withheld evidence regarding identifications. Here, Landano's new evidence had two effects, undermining identifications of Landano and implicating Forni. The withheld evidence relating to Portas, Roller, and Roth, all of which was presented to state tribunals, had similar effects.
 
 
 [4]
 The state court found that Portas' recantation was not credible, and thus refused to discredit his trial testimony. On the other hand, the district court, in the original habeas proceedings, found Portas' recantation to be credible, but was compelled to abide by the state court findings, because it was unable to find that the state court's credibility determination, a question of fact, was clearly erroneous. Landano v. Rafferty, 670 F.Supp. at 580-83. It is undisputed, though, that Portas was unable to identify Roller as the passenger in the getaway car. Thus, his identification is weak, even giving no credit to his later recantation